**William J. McCANN, Plaintiff,**

v.

**FALGOUT BOAT COMPANY, Defendant,**

v.

**Wesley R. T. METZNER, Third-Party Defendant.**

Civ. A. No. 66–G–108.

United States District Court
S. D. Texas,
Galveston Division.
Feb. 7, 1968.

Mandell & Wright, Sidney Ravkind, Houston, Tex., for plaintiff.

Fulbright, Crooker, Freeman, Bates & Jaworski, Owen W. Cecil, Houston, Tex., for defendant.

Butler, Binion, Rice, Cook & Knapp, John L. McConn, Jr., Houston, Tex., for third-party defendant.

## MEMORANDUM AND ORDER

NOEL, District Judge.

In 1966, Plaintiff, a resident of Texas and employed as a seaman aboard the vessel Campeche Seal, is alleged to have sustained injuries caused by the negligence of the defendant, its masters, agents, servants and employees, and/or the unseaworthiness of the Campeche

Seal. Plaintiff instituted suit in this court against Falgout Boat Company, the operator of the Campeche Seal, asserting a claim or damages arising from the alleged injuries and within the admiralty jurisdiction of the court, 28 U.S.C. § 1333, and identified as such under Federal Rule 9(h).[1] Defendant filed a third-party complaint (impleader) under Federal Rules of Civil Procedure, Rule 14(c) against Dr. Wesley R. T. Metzner, alleging that he is liable to the plaintiff for the damages complained of or is liable to the defendant in indemnity and/or contribution for any damages awarded plaintiff against defendant. Defendant has not alleged any basis of independent jurisdiction over Dr. Metzner or the subject matter of the third-party complaint, but urges that the third-party action should be treated as being ancillary to the main claim.

Plaintiff contends that he sustained a fracture to his right hand on October 16, 1966, while aboard the vessel Campeche Seal. At the time of the alleged injury the Campeche Seal was in a Japanese port, and the following day plaintiff was treated by a Japanese physician at Kushiro, Japan.

On October 20, 1966, plaintiff returned to the United States and his home in San Antonio, Texas. He received additional medical treatment to the injured hand from a San Antonio physician, Dr. Wesley R. T. Metzner. The treatment continued through April 15, 1967; however, plaintiff complains that he still suffers and will continue to suffer great physical pain and mental anguish, and that as a result of the injury his earning capacity has been impaired. Defendant contends that Dr. Metzner's treatment was improper, and that had plaintiff received proper medical treatment the fracture would have healed properly and

1. Rule 9(h) sets forth the procedure for identifying a claim for relief as being one within the admiralty or maritime jurisdiction where there is also some other basis for jurisdiction in the district court.

"If the claim is cognizable only in admiralty it is an admiralty or maritime claim for those purposes whether so identified or not." Rule 9(h).

without any residual disability. Defendant also alleges that plaintiff's extended period of recuperation and disability is due to the negligence and malpractice of third-party defendant.

The third-party defendant, Dr. Metzner, has moved to have the third-party complaint dismissed on the ground that the subject matter—medical malpractice —is not within the court's admiralty and maritime jurisdiction and that the court does not otherwise have jurisdiction over the subject matter or the person of Dr. Metzner. I agree, and the third-party complaint must be dismissed.

Federal Rule 14(c) governs the third-party practice in a case of admiralty jurisdiction. It provides as follows:

*Admiralty and Maritime Claims.* When a plaintiff asserts an admiralty claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way

of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make his defenses to the claim of the plaintiff as well as that of the third-party plaintiff * *.[2]

Rules 9(h) and 14(c) were amended to the Federal Rules of Civil Procedure as a part of the unification of the Admiralty and Civil Rules.[3] Prior to the amendments, the third-party practice in an admiralty case was governed by Admiralty Rule 56, after which Rule 14 (c), in substance, was patterned.[4]

The great majority of the courts had construed Admiralty Rule 56 not to allow the admiralty court to bring before it a third-party whose alleged obligation was non-maritime in character. Aktieselskabet Fido v. Lloyd Braziliero, 283 F. 62, 72 (2d Cir.), cert. denied, 260 U.S. 737,

---

2. An impleaded party stands as one charged with fault by the original petition, although in fact it did not so charge and is not amended. The cause is treated as if the petition had been filed against both the defendant and third-party defendant. See 2 Benedict, Admiralty § 351 (6th ed. 1940).

3. Amended on February 28, 1966 and effective as of July 1, 1966.

4. Admiralty Rule 56 read as follows:
Right to bring in party jointly liable
In any suit, whether in rem or in personam, the claimant or respondent (as the case may be) shall be entitled to bring in any other vessel or person (individual or corporation) who may be partly or wholly liable either to the libellant or to such claimant or respondent by way of remedy over, contribution or otherwise, growing out of the same matter. This shall be done by petition, on oath, presented before or at the time of answering the libel, or at any later time during the progress of the cause that the court may allow. Such petition shall contain suitable allegations showing such liability, and the particulars thereof, and that such other vessel, or person

ought to be proceeded against in the same suit for such damage, and shall pray that process be issued against such vessel or person to that end. Thereupon such process shall issue, and if duly served, such suit shall proceed as if such vessel or person had been originally proceeded against; the other parties in the suit shall answer the petition; the claimant of such vessel or such new party shall answer the libel; and such further proceedings shall be had and decree rendered by the court in the suit as to law and justice shall appertain. But every such petitioner shall, upon filing his petition, give a stipulation, with sufficient sureties, or an approved corporate surety, to pay the libellant and to any claimant or any new party brought in by virtue of such process, all such costs, damages, and expenses as shall be awarded against the petitioner by the court on the final decree, whether rendered in the original or appellate court; and any such claimant or new party shall give the same bonds or stipulations which are required in the like cases from parties brought in under process issued on the prayer of a libellant.

43 S.Ct. 97, 67 L.Ed. 489 (1922); David Crystal, Inc. v. Cunard Steamship Co., 223 F.Supp. 273, 291–292 (S.D.N.Y. 1963), aff'd on other grounds, 339 F.2d 295 (2d Cir. 1964), cert. denied, John T. Clark and Son v. Cunard Steamship Co., 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965); Capital Transp. Corp. v. Thelning, 167 F.Supp. 379, 380 (E.D.S.C. 1958); Mangone v. Moore-McCormack Lines, Inc., 152 F.Supp. 848 (E.D.N.Y. 1957); Warner v. The Gas Boat Bear, 126 F.Supp. 529, 15 Alaska 370 (D.Alaska 1955); The S. S. Samovar, 72 F.Supp. 54, 582 (N.D.Calif.1947). See also 3 Moore, Federal Procedure para. 14.20, at 669 (1966), and cases cited therein. The courts reasoned that when jurisdiction was based solely upon the admiralty nature of the cause of action, Rule 56 could not be read to enlarge the Federal court's jurisdiction to include a matter respecting which it would otherwise have no jurisdiction; the issues to be resolved all had to be of a maritime character. Another serious obstacle, pronounced by the Second Circuit, was the fact that in an admiralty case there is no right to a jury; [5] yet, if a party could be impleaded on a non-maritime matter, he, in effect, would be denied his right to have a jury pass upon that matter—raising grave Seventh Amendment constitutional problems. Aktieselskabet Fido v. Lloyd Braziliero, supra.

A cry for unification of the Admiralty and Civil Rules and the recognized need for modernization of the Admiralty Rules led to the drafting of proposed rules by the Advisory Committee on Admiralty Rules, and the subsequent adoption of the unified rules by the United States Supreme Court.[6] This resulted in the evolution of one body of Federal Rules to cover both civil and admiralty proceedings; as of July 1, 1966, the former Admiralty Rules were rescinded. As will be seen, however, complete procedural unification was not achieved.

Prior to unification, Rule 14 uniformly had been construed to allow liberal impleading of parties and issues so as to avoid multiplicity of suits. See Pennsylvania R. R. Co. v. Erie Avenue Warehouse Co., 302 F.2d 843, 845 (3d Cir. 1962); Dery v. Wyer, 265 F.2d 804, 806–807 (2d Cir. 1959). The courts implemented this policy by treating a third-party claim as one ancillary to the main claim, upon which the court's jurisdiction had been based.[7] The 1966 amendments to Rule 14(a) neither extended nor limited the court's ancillary jurisdiction in cases of civil (non-maritime) jurisdiction.[8] Thus, as always, if the court has diversity jurisdiction over the main suit, no independent jurisdiction is required to implead a third party if the requirements of Rule 14(a) are otherwise met. H. L. Peterson Co. v. Applewhite, 383 F.2d

5. See Waring v. Clarke, 46 U.S. (5 How.) 441, 460–462, 12 L.Ed. 226 (1847), Gilmore and Black, Admiralty 9 (1957). There are statutory exceptions for specific cases under 28 U.S.C. § 1873 and for a person accused of a maritime criminal offense, 18 U.S.C. § 7, 5 Moore, Federal Practice para. 38.35 [7] (1966).

6. The history of the Admiralty Rules and the unification process is surveyed in Bradley, Admiralty Aspects of the Civil Rules, 41 F.R.D. 257 (1967), and in Colby, Admiralty Unification, 54 Geo.L.J. 1258 (1966).

7. This policy is not without its limitations. See 3 Moore, Federal Practice para. 14.25 (1966); Mazzella v. Pan Oceanica

A/S Panama, 232 F.Supp. 29 (S.D.N.Y. 1964). See further discussion in note 12, infra.

8. The only change in Rule 14(a) relates to a third-party complaint which is within the admiralty and maritime jurisdiction. The portion added provides: "The third-party complaint, if within the admiralty and maritime jurisdiction, may be in rem against a vessel, cargo, or other property subject to admiralty or maritime process in rem, in which case references in this rule to the summons include the warrant of arrest, and references to the third-party plaintiff or defendant include, where appropriate, the claimant of the property arrested."

430, 433 (5th Cir. 1967); Thompson v. United Artists Theatre Circuit, Inc. 43 F.R.D. 197 (S.D.N.Y.1967). Admiralty courts had taken a more discriminating position with respect to third-party practice under Admiralty Rule 56; for, as previously indicated, non-maritime impleading was not permitted. The practice under Rule 14 and Admiralty Rule 56 differed in another important respect. While traditionally there has been no right to a trial by jury in an admiralty case, a party impleaded under Rule 14(a) or (b) was and still is entitled to demand a jury trial on the issues raised in the third-party complaint or answer (of any issue so triable). Fed.R.Civ.P. Rule 38 (b). See 2B Barron and Holtzoff, Federal Practice and Procedure § 893 (1961).

What effect, if any, did the unification of Civil Rule 14 and Admiralty Rule 56 have upon the third-party practice in a case of admiralty and maritime jurisdiction, within the meaning of Rule 9(h), where the alleged obligation of the third party is non-maritime in nature, and, in any event, upon the right of a third party to a jury trial? Prefatory to resolving these matters, a brief examination will be made of the origin and development of admiralty jurisdiction in the federal courts.

Article III, section 2 of the United States Constitution states that the judicial power of the United States courts shall extend "to all cases of admiralty and maritime Jurisdiction * * *." Section 9 of the Judiciary Act of 1789 implemented this constitutional grant by giving the district courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it * * *." Judiciary Act of 1789, Ch. 20, § 1, 1 Stat. 76–77. The Judiciary Act of 1789 was later revised, and substantially the identical language is contained in 28 U.S.C. section 1333.[9]

Congress cannot confer upon the inferior courts of the United States jurisdiction over cases and controversies that are not within the judicial power of the United States (i. e., beyond the limits of the Constitution). Hodgson v. Bowerbank, 5 Cranch 303, 3 L.Ed. 108 (1809). Federal courts, unlike state courts, have jurisdiction limited to those matters enumerated in the Constitution, such as Article III, section 2, and over those matters Congress has granted them by valid statute.[10] 1 Moore, Federal Practice para. 0.60 [3] (1964). However, supplementing such grants of jurisdiction, federal courts have ancillary, auxiliary or pendent jurisdiction over such matters as, for example, would arise under Federal Rule 14 (third-party practice).

The district courts have jurisdiction over admiralty and maritime matters pursuant to 28 U.S.C. section 1333, a carry-over of the Judiciary Act of 1789, supra. See generally Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). This jurisdiction is exclusive unless the claim is one within the "saving to suitors" clause of the Judiciary Act of 1789 (now 28 U.S.C. § 1333); if it does fall within the latter clause, the suitor may elect to bring suit in state court or in federal court either on the admiralty side or on the law side, provided that in the latter instance there

9. See Note 17, infra. The coordination between section 1333 and the 1789 version is analyzed in Black, Admiralty Jurisdiction: Critique and Suggestions, 50 Colum.L.Rev. 259 (1950).

10. District courts are vested with jurisdiction over (a) federal crimes, (b) admiralty, (c) bankruptcy, (d) a variety of civil actions where jurisdiction rests upon diversity of citizenship and amount in controversy, (e) matters under a special grant of federal jurisdiction, or (f) general federal questions. But district courts do not have exclusive jurisdiction over all these matters. 1 Moore, Federal Practice, para. 0.2 [2], at 14 (1964).

is some basis for jurisdiction other than the admiralty or maritime nature of the claim. The reason for the exclusive jurisdiction in admiralty matters is to allow the formulation and preservation of "the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign States." Rodd v. Heartt, (Lottawanna) 88 U.S. (21 Wall.) 558, 575, 22 L.Ed. 654 (1874). See also Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

Admiralty jurisdiction depends upon the maritime nature of the event out of which the claim arises. In the case of a tort, such jurisdiction depends upon the locality of the injury. The Admiral Peoples, 295 U.S. 649, 651, 55 S.Ct. 885, 79 L.Ed. 1633 (1935). In the case at hand, the injury complained of by plaintiff occurred aboard a sea-going vessel. The complaint filed by plaintiff designates the suit as "a cause of action in Admiralty as defined by Section 9(h)," and none of the parties has questioned the fact that the court has admiralty and maritime jurisdiction of this case. Clearly it is maritime in nature. Igneri v. Cie. de Transports Oceaniques, 323 F.2d 257, 259 (2d Cir. 1963), cert. denied, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964). Whether there could be some other basis for jurisdiction in the federal court has not been raised; but, as plaintiff has expressly designated this as a Rule 9(h) cause of action, the inquiry has become academic. The third-party complaint has been attacked as being non-maritime in nature. The issue now is whether this court, ancillary to its admiralty jurisdiction over the main cause of action, has jurisdiction over a non-maritime third-party complaint filed pursuant to Rule 14(c). This, so far as I am able to discern, is a case of first impression.[11]

It has been demonstrated that Rule 14(c) follows the language of rescinded Admiralty Rule 56. In drafting proposed Rule 14(c), the Advisory Committee must have been aware that Admiralty Rule 56 had been construed to require independent, and perhaps admiralty, jurisdiction over a third-party complaint. If the Committee wished to change that interpretation, a desire to do so was not expressed. The implication is that the practice under Admiralty Rule 56 (disallowing non-maritime impleaded where sole basis of jurisdiction lay in admiralty) was to be retained. This follows for several reasons. First, the Supreme Court, which adopted Rule 14 (c), has said on numerous occasions that, as an aid to construction, a prior interpretation of a statute must be deemed to have received legislative approval by the reenactment of the statutory provision without material change. See, for example, United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893 (1933). I am confident that the Supreme Court would not apply a different standard in the construction of a Federal rule. Secondly, while the Advisory Committee's Note to Rule 14(c) does not cover specifically the problem of jurisdiction over a non-maritime third-party complaint, it did say: "Retention of the admiralty practice in those cases

---

11. The issue was raised but not resolved in Williams v. United States, 42 F.R.D. 609, 614 (S.D.N.Y.1967). The question was also raised in Young v. United States, 272 F.Supp. 738 (D.S.C.1967). *Young* was pending at the time the Admiralty and Federal Rules were unified. Rule 86(e) provided that the new amendments would govern all suits brought after July 1, 1966 and all actions then pending, except where the court was of the opinion that in cases then pending application of the new rules would not be feasible or would work an injustice. Reasoning that the Government's position that the third party had waived the right to jury would raise constitutional objections (right to trial by jury), the court concluded that denial of a jury trial would violate the spirit of Rule 86 (e). 272 F.Supp. at 742–743. Therefore, the impleading petition was dismissed.

that will be counter-parts of a suit in admiralty is clearly desirable." Thirdly, allowing a non-maritime impleader in an admiralty case would be an extension of the court's jurisdiction which had not been permitted under Admiralty Rule 56. Rule 82, however, states: "These rules shall not be construed to extend or limit the jurisdiction of the United States district courts * * *." Fourthly, and a matter which will be discussed later in some detail, Rule 38(e) did not remove one of the serious objections to a non-maritime third-party complaint— the right of the third party to a trial by jury.

██ I construe Rule 14(c) to mean that, like its predecessor Admiralty Rule 56, there can be no non-maritime impleader in an action where the jurisdiction of the district court is based exclusively upon the maritime nature of the plaintiff's claim for relief—absent independent, and perhaps admiralty, jurisdiction over the third party or the subject matter of the third-party complaint. Unification did not automatically extend the liberal third-party practice permitted under Rule 14(a) and (b), where independent jurisdiction normally is not required, to Rule 14(c). In fact, Rule 14(c), unlike Rule 14(a) and (b), relates specifically and exclusively to the third-party practice in cases of admiralty and maritime jurisdiction. If a defendant were allowed to implead a party under Rule 14(c) who might be liable to the original plaintiff but whose alleged obligation is. non-maritime in character and over whom the court has no independent jurisdiction, the result would be to permit an extension of the federal court's jurisdiction contrary to the mandate of Rule 82 and beyond that traditionally accorded under the more liberal, jurisdiction-wise, Rule 14(a).[12] See, for example, Friend v. Middle Atlantic Transp. Co., 153 F.2d 778 (2d Cir.), cert. denied, 328 U.S. 865, 66 S.Ct. 1370, 90 L.Ed. 1635 (1946).

██ Rule 14(c) permits such an impleader of a third party "who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the *same transaction, occurrence, or series of transactions or occurrences.*" (Emphasis added.) Taking into account the fact that United States district courts are courts of limited jurisdiction, the traditional philosophy of admiralty jurisdiction as expressed in the courts' interpretation of rescinded Admiralty Rule 56,[13] and the

---

12. Pursuant to Rule 14(c), a defendant may bring in a third party who may be liable either to the plaintiff or to the defendant by way of remedy over, contribution, or otherwise on account of the same transaction or occurrence or series of transactions or occurrences. Prior to 1946, a defendant in a civil action could implead a third party who might be liable to either plaintiff or defendant. But Rule 14 was amended in 1946 to allow a defendant only to bring in a person who may be liable to the defendant for plaintiffs' claim against him. This philosophy has been brought forward in Rule 14(a). See 3 Moore, Federal Practice para. 14.26, at 701; Railey v. Southern Ry. Co., 31 F.R.D. 519 (E.D. S.C.1963).

Thus, if jurisdiction exists between plaintiff and defendant, it is not necessary that independent jurisdiction exist between defendant and third-party defendant in order for the defendant to recover a judgment against the third-party defendant. Huggins v. Graves, 337 F.2d 486, 488 (6th Cir. 1964).

On the other hand, a defendant may not cause a third party to be brought into a federal action under Rule 14(a) to answer the plaintiff's claim if plaintiff and third party are citizens of the same state and federal jurisdiction does not otherwise appear. Friend v. Middle Atlantic Transp. Co., 153 F.2d 778 (2d Cir.), cert. denied, 328 U.S. 865, 66 S.Ct. 1370 (1946). Established boundaries of federal jurisdiction must be observed. Ibid.

13. Compare Petition of Klarman, 270 F. Supp. 1001, 1003 (D.Conn.1967), where the court refused to construe Rule 14(c) in a manner which would conflict with the interpretation given Admiralty Rule 56.

rules of construction applicable to Rule 14(c), relief sought against the third-party defendant must arise out of the same *maritime* transaction, occurrence, or series of transactions or occurrences. This construction applies to a case, such as the one at hand, where no independent ground for federal jurisdiction has been asserted. The claim against Dr. Metzner is reduced, therefore, to an entirely separate and independent action which cannot be maintained against a third party under Rule 14. Joe Grasso & Son, Inc. v. United States, 42 F.R.D. 329 (S.D.Tex. 1966), aff'd, 380 F.2d 749 (5th Cir. 1967).[14]

 The situs of a tort (i. e. locality of the injury) determines whether or not it is maritime in nature—it must occur upon the high seas or upon navigable waters. The Admirals Peoples, 295 U.S. 649, 55 S.Ct. 885 (1935); Forgione v. United States, 202 F.2d 249, 252–253 (3rd Cir.), cert. denied, 345 U.S. 966, 73 S.Ct. 950, 97 L.Ed. 1384 (1953). The medical malpractice tort alleged in the third-party complaint against Dr. Metzner arose in San Antonio, Texas, and by no stretch of the imagination occurred upon the high seas or upon navigable waters. The third-party action, being non-maritime in nature, cannot be brought under Rule 14(c). But, there is yet another reason why the third-party complaint must be dismissed.

The Advisory Committee must have been cognizant of the courts' most serious objection to allowing a non-maritime impleader in an admiralty suit—denial of the third party's constitutional right to trial by jury under the Seventh Amendment. Had the Committee wished to speak on this matter, it would have done so in the amendment to Rule 38, Rule 38(e). If the Committee did speak, it was in the negative, for Rule 38(e) provides: "Admiralty and Maritime Claims. These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h)." Rule 38(e) thereby preserves for admiralty and maritime cases the plaintiff's right to foreclose a demand by defendant for jury trial and creates no new right of a third party to trial by jury. This is made certain in the Committee's Note to Rule 9(h), where it says: "It is no part of the purpose of unification to inject a right to jury trial into those admiralty cases in which that right is not provided by statute."[15] 7A Moore, supra at 387; Rule 9, 28 U.S.C.A. at 143 (1967 Supp.). This position is expressed somewhat more strongly in 2B Barron and Holtzoff, Federal Practice and Procedure § 871 (1967 Supp.):

> The merger of civil and admiralty procedure in 1966 does not affect the right to jury trial. If the only basis for jurisdiction is that the case is an admiralty case, there is no right to a jury. If jurisdiction can alternatively be based on a federal question, or on diversity and the necessary jurisdictional amount, either party may demand a jury trial unless plaintiff has chosen to identify the claim as an admiralty or maritime claim, as permitted by Rule 9(h). If he exercises that option Rule 38(e) provides that there is no right to a trial by jury.

See also 2B Barron and Holtzoff, op. cit. supra § 872, and 1A Barron and Holtzoff § 309 (1967 Supp.) This important aspect of impleaded jurisdiction merits further examination.

---

14. In this regard, it is worth noting that "claim" is defined as "a group of operative facts giving occasion for judicial action." 380 F.2d at 751.

15. 28 U.S.C. § 1873 expressly gives the right to trial by jury upon demand by either party in cases of admiralty and maritime jurisdiction relating to matters of contract or tort arising out of or concerning certain vessels operating upon the Great Lakes. This is an exception to the general rule. See Texas Menhaden Co. v. Palermo, 329 F.2d 579, 580 (5th Cir. 1964) (Per Curiam).

The Seventh Amendment to the United States Constitution was proposed by the First Congress on September 25, 1789, and ratified by the states on December 15, 1791. It provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." [16] However, on September 24, 1789, Congress had passed the Judiciary Act of 1789, which provided that "the trial of issues in fact, in the district courts, in all cases except civil causes of admiralty and maritime jurisdiction, shall be by jury." Judiciary Act of 1789, ch. 20, § 9, 1 Stat. 73, 77. Trial by jury is not available in admiralty suits because Congress felt that jurisdiction of transactions so peculiar as those of the sea should be exercised by judges schooled to understand its unique character. 2 Benedict, Admiralty § 224 (1940). This section of the Judiciary Act of 1789 was repealed in 1940, and subsequent thereto the Supreme Court, reflecting upon Waring v. Clarke, supra, in 1963 held that while the Seventh Amendment does not require jury trials in admiralty cases, neither the Seventh Amendment nor any other provision in the Constitution, nor any statute of Congress or civil or admiralty rule of procedure forbids jury trials in maritime cases. Fitzgerald v. United States Lines Co., 374 U.S. 16, 20, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). [17] Nonetheless, with or without Congressional or Supreme Court sanction, the courts have followed the tradition of disallowing a demand for a jury in admiralty cases, except under the specific authorization of 28 U.S.C. § 1873. See Texas Menhaden Co. v. Palermo, 329 F.2d 579, 580 (5th Cir. 1964) (Per Curiam). In *Fitzgerald*, the Court noted that Congress has left to the Supreme Court the responsibility of fashioning the controlling rules of admiralty law, [18] 374 U.S. at 20, 83 S.Ct. 1646; but when the Court adopted the proposed amendments to the Federal Rules (unification of Admiralty and Civil Rules) in 1966, no specific provision was included to allow a jury trial in a maritime action. It would appear, therefore, that the Supreme Court acquiesced to the

---

16. The historical significance is explored, in a narrow context, in a recent article. Henderson, The Background of the Seventh Amendment, 80 Harv.L.Rev. 289 (1966).

17. In *Fitzgerald*, the Court was faced with the situation of a seaman bringing suit against his employer for negligence under the Jones Act, 46 U.S.C. § 688, on the "law" side rather than the admiralty side of the federal court (i. e., some basis for jurisdiction other than admiralty) in order to have a jury hear his case, but who also sought recovery for maintenance and cure and unseaworthiness which traditionally are within the court's admiralty and maritime jurisdiction. The Court held that he was entitled to a jury trial on all issues.

Section 1333(1), 28 U.S.C., popularly called the "Saving to Suitors" clause, provides that the district courts shall have jurisdiction exclusive of the state courts of "Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." This section allows a person to pursue a cause of action in personam arising out of an admiralty or maritime transaction in the state court or on the civil ("law") side of the federal court, provided he seeks a remedy which the common law was capable of giving him prior to the passage of the Judiciary Act of 1789. This procedure is outlined in 7A Moore, Federal Practice para. 59[3] (1967). See Atlantic and Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).

Under the saving to suitors clause, seemingly there would be nothing to prevent a plaintiff from bringing a maritime-type suit on the law side of the federal court if there were diversity of citizenship and jurisdictional amount. In such a case, a party like Dr. Metzner could be impleaded under Rule 14(a).

See Currie, The Silver Oar and All That: A Study of the Romero Case, 27 U.Chi. L.Rev. 1, 5–6 (1959).

18. See 28 U.S.C. § 2072.

**44**

tradition of not allowing a jury trial if the federal court's jurisdiction is founded upon the admiralty and maritime nature of the suit.

 The right of a party to a trial by jury, where permitted, is sacrosanct. If there is a question as to whether trial by jury is permitted or not, it would appear that any doubt should be resolved in favor of permitting a jury trial, if timely demanded. In Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935), the Supreme Court was moved to say: "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." See also Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), which the Fifth Circuit construed to hold "that where the presence of legal and equitable causes in the same case requires the selection between a jury and a non-jury determination of certain common issues, the discretion of the trial court is 'very narrowly limited and must, wherever possible, be exercised to preserve jury trial.'" Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 294 F.2d 486, 490 (5th Cir. 1961).[19] These pronouncements are in keeping with 28 U.S.C. section 2072, which provides: "Such rules [prescribed by the Supreme Court] shall * * preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution."

 I construe Rule 38(e) to mean that if a third party is impleaded pursuant to Rule 14(c), the third party does not have a right to a jury trial either on the issues raised in the third-party complaint on those he raises by way of his answer. Under this construction, if in an admiralty-jurisdiction suit a defendant could implead a person under a non-maritime, third-party complaint, the third party would be denied the right to demand a jury trial. This would raise a serious constitutional question, and the Rules should be construed so as to avoid even a doubt as to their constitutionality. See Schneider v. Smith, 390 U.S. 17, 88 S.Ct. 682, 19 L.Ed.2d 799 (Jan. 16, 1968); United States v. Harriss, 347 U.S. 612, 618 n. 6, 74 S.Ct. 808, 98 L.Ed. 989 (1954); NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937), and cases cited therein. And if there are two possible constructions of the Rules, one which would raise a constitutional question and one which would not, the Rules should be construed in a way that will avoid the constitutional issue. Compare NLRB v. Fruit and Vegetable Packers and Warehousemen, Local 760, 377 U.S. 58, 63, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964); Ashwander v. T. V. A., 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936). Both as a matter of constitutional and practical construction, Rule 14(c) does not permit a person to be impleaded in an admiralty suit without an independent basis of federal, and perhaps admiralty, jurisdiction.

Now, therefore, it is hereby ordered

(a) that the third-party complaint filed against Wesley R. T. Metzner be, and the same is, dismissed;

(b) that each party shall bear and pay its costs incurred herein.

---

19. In a Jones Act case brought on the "law" side, the Fifth Circuit concluded that the district court had substituted its judgment for that of the jury's. The court said: "That it is violative of the Seventh Amendment to the Constitution of the United States for a court to so invade the province of a jury is so fundamental that it need not be supported by citation." Korbut v. Keystone Shipping Co., 380 F.2d 352, 354 (5th Cir. 1967).