**MARUBENI–IIDA (AMERICA), INC.**

v.

**TOKO KAIUN KABUSHIKI KAISHA
and The SS EGLE**

v.

**TEXPORTS STEVEDORE COMPANY, Inc.**

**Civ. A. No. 69–H–1048.**

United States District Court,
S. D. Texas,
Houston Division.

May 12, 1971.

Thomas H. Leach, Leach, Grossel-Rossi & Paysse, New Orleans, La., for plaintiff.

J. E. Davey, Eikel & Davey, Houston, Tex., for defendant.

G. Byron Sims, Brown & Teed, Houston, Tex., for third-party defendant.

## MEMORANDUM AND ORDER DENIAL OF MOTION FOR SUMMARY JUDGMENT

SINGLETON, District Judge.

On or about October 15, 1968, a cargo of ERW black steel line pipe, was loaded on board the *S. S. Egle* in Nogoya, Japan. This cargo pipe was shipped under Toko Kaiun Kabushiki Kaisha's (Toko) bills of lading. The cargo was delivered in Houston from the vessel on or about December 1, 1968. On May 26, 1969, which was within one year after the cargo was discharged, plaintiff, Marubeni-Iida (America) Inc., filed suit in the United States District Court for the Eastern District of Louisiana, New Orleans Division, against Toko and the *S. S. Egle*, alleging damage to the cargo. In late 1969, the cause was transferred to the

District Court in Houston. On July 22, 1970, more than one year after the delivery of the cargo, the defendant Toko filed a third-party complaint against the third-party defendant, Texports Stevedore Company, Inc.

In presenting this court with a motion for summary judgment, the parties have armed the court with little case authority to voyage a turbulent sea of complex legal issues. The core of the motion is centered in the procedural gulf between the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(6) and Fed. R.Civ.P. 14(c). The applicable COGSA provision provides:

> "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered. * * * " 46 U.S.C. § 1303(6).

Fed.R.Civ.P. 14(c) makes the following third-party practice applicable to maritime suits:

> "When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make his defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff."

Both parties admit to this court's jurisdiction under Fed.R.Civ.P. 9(h) and, accordingly, this will not receive further attention. The conflict persists as to whether a third-party indemnity complaint filed by the original defendant, after the one year statute of limitations as provided in COGSA has run, can stand.

Rule 14 introduced into the federal civil practice the procedure of impleader, long familiar in England and in admiralty, by which a defendant can bring in as a third-party defendant one claimed by the defendant to be liable to him for all or part of the plaintiff's claim against defendant. The procedure effectively avoids circuity of action and attempts to dispose of the entire subject matter arising from one set of facts in one action, thus administering complete justice, expeditiously and economically. C. Wright, Federal Courts (3d ed. 1970) at 332–333. If a third-party plaintiff acts promptly, he may invoke the procedure by service of a summons, otherwise he must obtain leave of the court.

Rules 9(h) and 14(c) of the Federal Rules of Civil Procedure were amended as a part of the unification of the admiralty and civil rules (amended on February 28, 1966, and effective as of July 1, 1966). Prior to that time the admiralty impleader practice was controlled by Admiralty Rule 56, after which Rule 14(c) was patterned.

Admiralty Rule 56 reads as follows:

> "Right to bring in party jointly liable In [sic] any suit, whether in rem or in personam, the claimant or respondent (as the case may be) shall be entitled to bring in any other vessel or person (individual or corporation) who may be partly or wholly liable either to the libellant or to such claimant or respondent by way of remedy over, contribution or otherwise, growing out of the same matter. This shall be done by petition, on oath, *presented before or at the time of answering the libel, or at any later time during the progress of the cause that the court may allow.* Such petition shall contain suitable allegations showing such liability, and the particulars thereof, and that such other vessel, or person

ought to be proceeded against in the same suit for such damage, and shall pray that process be issued against such vessel or person to that end. Thereupon such process shall issue, and if duly served, such suit shall proceed as if such vessel or person had been originally proceeded against; the other parties in the suit shall answer the petition; the claimant of such vessel or such new party shall answer the libel; and such further proceedings shall be had and decree rendered by the court in the suit as to law and justice shall appertain. But every such petitioner shall, upon filing his petition, give a stipulation, with sufficient sureties, or an approved corporate surety, to pay the libellant and to any claimant or any new party brought in by virtue of such process, all such costs, damages, and expenses as shall be awarded against the petitioner by the court on the final decree, whether rendered in the original or appellate court; and any such claimant or new party shall give the same bonds or stipulations which are required in the like cases from parties brought in under process issued on the prayer of a libellant." (emphasis added)

■■ Clearly, the old admiralty rules did not contemplate the foreclosure of a third-party complaint if the cause fell within admiralty jurisdiction and could competently be handled in the original suit. *See* McCann v. Falgout Boat Co., 44 F.R.D. 34 (D.C.Tex.1968). It must be concluded that the drafters of the present Rule 14(c) gave tacit approval to the prior Admiralty Rule 56. This follows because the interpretation of rules and statutes are analogous, and the Supreme Court has previously held that a prior interpretation of a statute must be deemed to have received legislative approval by the reenactment of a statutory provision if done without material change. *See* generally United States v. Dakota-Montana Oil Co., 288

U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893 (1933).

Furthermore, in the Advisory Committee Notes to Fed.R.Civ.P. 14 it was stated that:

"Retention of the admiralty practice in those cases that will be counterparts of a suit in admiralty is clearly desirable."

The Advisory Committee Notes do not directly discuss the filing of a suit within 10 days of serving the answer or by leave of the court as it may apply to maritime suits. But the lack of any word to the contrary strongly suggests that the provisions of Rule 14(a) and (b) apply with equal force to all suits in federal court; thus allowing a third-party complaint by leave of the court at any time. Admiralty Rule 56 certainly made explicit provisions for filing at any time: " * * * presented before or at the time of answering the libel, *or at any later time during the progress of the cause that the court may allow.*" (emphasis added). Indeed, some commentators would dispense with the requirement of leave regardless of the time when impleader is effected and would rely on subsequent action by the court to dismiss the impleader if it would unduly delay or complicate the litigation or would be otherwise objectionable. *See* 1A Barron & Holtzoff, Federal Practice & Procedure 649–650 (Wright ed. 1960); Comment, 58 Colum.L.Rev. 532, 546 (1958).

In the instant case, the stevedore company, as the third-party defendant, has relied heavily on the case of Grace Lines, Inc. v. Central Gulf Steamship Corp., 416 F.2d 977 (5th Cir., 1969). That cargo damage case is distinguishable on its facts from the case at bar. *Grace* involved a time-charter where the charterer had extended the time of filing the complaint by the original plaintiff. The third-party plaintiff (i. e., the charterer) attempted to file an indemnity suit against the shipowner, Grace. The court held there that the COGSA one year limitation would apply to the charter party;

consequently dismissing the suit. In so doing the court noted:

"Even if Grace could be held liable for the damaged cargo as the result of an unauthorized extension of the period of limitation by Central, no right of indemnity would exist. By extending the period of Grace's liability to Royal, Central interfered with Grace's defense of limitation and thus would operate to discharge the indemnitor. 42 C.J.S. Indemnity § 40 (1944)" *Grace, supra* at 979.

A charter is a contract between the shipowner and charterer which through the clause paramount can automatically incorporate COGSA and its one year statute of limitations into the charter. This is a critical point in the *Grace Line* case, for both shipowner and charterer could have been sued by cargo within one year under COGSA, but the original plaintiff did not sue Grace Lines. Thus, the cross action for indemnity by Central Gulf against Grace was precluded, since to do otherwise would strip Grace of its limitations defense. The stevedore can never be sued directly under COGSA, since it is not a shipper, consignee or carrier designated in the statute. Thus it cannot claim the benefits of COGSA in a suit brought directly against it by cargo, unless it is made a third party beneficiary of the provisions of the bill of lading controlled by COGSA as between cargo and its carrier. If it is to be such a third party beneficiary, such intent must be expressly recited by the parties in the bill of lading. In the present case Clause 24 is extremely broad and may constitute such an express intention, so that a suit by cargo *direct* against the stevedore might be barred by the one year statute of limitations of COGSA.

However, in the present case, this issue did not arise, since suit by cargo was not direct against the stevedore. Here the suit was against the charterer and the vessel, and there is indication that the charterer planned or is planning to settle with cargo. This situation precipitated the transfer of the case so that the charterer, in turn, might recoup its payment in the indemnity action against the stevedore. Whether or not charterer has settled is relevant only insofar as answering the query as to when an indemnity action arises. In any view, this indemnity action was filed within the two year Texas statute. Vernon's Ann.Tex. Rev.Civ.Stat. art. 5526.

This court holds that the better reasoned decision would not allow the COGSA statute of limitations to bar this suit. This result would not thwart the purpose of Fed.R.Civ.P. Rule 14 and the historic doctrines of Admiralty Rule 56. It does not minimize the Congressional purpose of the time limitation of COGSA, for the prevention of the litigation of stale suits is accomplished by the fact that the main suit was filed within the time set out in the statute and all claims arose out of the same transaction.

This conclusion would be consistent with the legal concept that the ordinary cause of action for indemnity is separate from the suit for initial liability insofar as time bar periods are concerned. The right of indemnity would accrue once payment was made, and the statute of limitation on an action to enforce that right would not begin to run until payment was made. States Steamship Company v. American Smelting and Refining Company, 339 F.2d 66 (9th Cir. 1964); Lyons-Magnus Incorporated v. American-Hawaiian SS Co., 41 F.Supp. 575 (S.D.N.Y.1941); St. Paul Fire and Marine Insurance Co. v. United States Lines Company, 258 F.2d 374 (2nd Cir. 1958).

It would also alleviate the harsh practicalities of the situation where the original plaintiff files his suit on the day before or the last day of the one year period, thus, not allowing the defendant time to implead a third-party defendant (even with the ten day filing period of Fed.R.Civ.P. 14).

The stevedore company also relies on United States v. The South Star, 210 F. 2d 44 (2nd Cir., 1954). Any discussion in that case of the issues presented here is dicta for the original suit there was

filed after COGSA's one year limitation had expired.

■ A more recent Fifth Circuit case has researched the area and held the analogous statutory three year limitation period of the Jones Act, 46 U.S.C. § 688, not to be a bar to a defendant's fourth-party complaint. Watz v. Zapata Off-Shore Co., 431 F.2d 100 (5th Cir., 1970). In admiralty, a defense to the issue of laches can save a cause of action irrespective of the statute of limitations. Watz involved a suit brought by an injured shipyard worker against the vessel owner eight years after the injury occurred. The vessel impleaded the maker of the hoist involved in the accident; this manufacturer then impleaded the assembler-producer of the defective chain link found to be the cause of the malfunctioning of the hoist. Since the vessel was determined to be in dry dock, the doctrine of unseaworthiness did not apply and the vessel was dismissed from the suit. The court went on to hold:

"We conclude that the district court had admiralty jurisdiction of Watz's complaint against Eaton [impleaded manufacturer]. The Texas statute of limitations therefore does not apply. Instead, we look to the analogous limitations period of the Jones Act, which is three years. 46 U.S.C. § 688; Flowers v. Savannah Machine & Foundry Company, 5 Cir. 1962, 310 F. 2d 135. Since the action was brought after this statute had run, Watz bears the burden of proof with regard to the two elements counteracting a laches defense; excuse for the delay and lack of prejudice to the defendant. McMahon v. Pan American World Airways, 5 Cir. 1962, 297 F.2d 268, 270.

"The district court concluded:

"That no harm having been shown by reason of the delay for filing the plaintiff's cause of action and by reason that he did not prevent one witness or any evidence from being heard and by reason of the fact that all the defendants, Zapata Off-Shore Company and Eaton Yale & Towne, Inc., had notice within a matter of months after the occurrence that the doctrine of laches or limitations does not apply." Watz, supra at 111.

The equity theory of laches is the counterpart of the "leave on motion" in Rule 14. The two traditional elements for defeating a laches defense, excuse for delay and lack of prejudice to the defendant, have recently been modified. In Molnar v. Gulfcoast Transit, 371 F.2d 639, 642 (5th Cir. 1967), the Fifth Circuit declared that "[a]lthough frequently classified as a separate element, the inexcusability of the delay is closely intertwined with the predominate factor of detriment or lack of detriment, and what is a thin excuse may turn out to be bearable because no harm is suffered." Akers v. State Marine Lines, Inc., 344 F.2d 217, 220 (5th Cir. 1965), held that unexcused delay without prejudice would not bar a suit. In Watz, supra, the court held laches would not apply, declaring:

"Crews v. Arundel Corporation, 5 Cir. 1967, 386 F.2d 528, 530, concluded that it was settled that 'claims based on unseaworthiness are barred only if the delay in filing the libel beyond the three-year Jones Act limitation period is inexcusable and if the delay has prejudiced the defense of the suit' (emphasis original). Since proof of either absence of prejudice or excuse for delay will repel a claim of laches, we conclude that the absence of prejudice in this case justifies the district court's decision not to dismiss the suit for laches." Watz, supra at 112.

■ In the suit at bar, the original case was granted transfer from the New Orleans district court on October 22, 1969, to the Houston court in order that service could be obtained on the third-party defendant. On July 22, 1970, the said third-party complaint was filed. In the pragmatic light of modern legal practice, the time that lapsed is not as a matter of law conclusive as inexcusable delay nor does it produce detrimental results to the third-party defendant.

The long respected policy of disposing of issues arising out of a single transaction by means of nonprejudicial judi-

cial procedures can only be furthered by denying the motion for summary judgment and allowing all the parties involved in this case to go to trial on the merits.

It is hereby ordered, adjudged and decreed that this motion for summary judgment be denied.