[No. A016502. First Dist., Div. One. Dec. 21, 1984.]

U. S. COLD STORAGE OF CALIFORNIA,
Cross-complainant and Appellant, v.
MATSON NAVIGATION COMPANY, Cross-defendant and Respondent.

COUNSEL

Randall C. Creech, Steven R. Levy, Glaspy, Elliott, Creech, McMahon & Reed and Glaspy, Elliot, Creech, McMahon, Roth & Reed for Cross-complainant and Appellant.

Kelly C. Wooster and Brobeck, Phleger & Harrison for Cross-defendant and Respondent.

OPINION

**NEWSOM, J.**—The instant appeal arises in the following circumstances. U. S. Cold Storage of California (hereafter appellant or Cold Storage) contracted with Foster Food Products (hereafter Foster) to transport the latter's poultry from Oakland, California to Honolulu, Hawaii. Foster delivered the

goods to appellant's facility in Oakland, where they were loaded into refrigerated trailers owned by Matson Navigation Company (hereafter respondent or Matson). The poultry was then taken to Matson's Oakland dock facility whence it was shipped on Matson's vessel to Honolulu.

The poultry arrived in Hawaii on December 15, 1979, in spoiled condition. Cold Storage presented a claim for cargo damage to Matson in August of 1980, which the latter rejected.

On March 18, 1981, Foster brought suit against Cold Storage and Matson for damages based upon theories of breach of contract and negligence, claiming that spoilage was caused by improper refrigeration in transit. Cold Storage answered the complaint on August 28, 1981, and on that date also filed a cross-complaint against Matson for comparative equitable indemnity and implied indemnity.

After answering the cross-complaint, Matson moved for summary judgment against both Foster and Cold Storage on the ground that the latter's indemnity claim was essentially for cargo damage and hence barred by the one-year statute of limitations found in the Carriage of Goods by Sea Act (hereafter COGSA). (46 U.S.C. § 1303(6).) After hearing, the motion was granted and a judgment entered dismissing both the complaint and cross-complaint against Matson. This appeal followed.

■■■ Cold Storage argues that the trial court erred in finding the indemnity claim time barred under title 46, section 1303(6) of the United States Code, which, in pertinent part, provides: "[T]he carrier and the ship shall be discharged from all liability with respect of loss of damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered . . . ." Characterizing its action as one for equitable and implied indemnity, for which the statute of limitations accrues only upon the date of payment of a claim by the indemnitee, Cold Storage contends that the cited statute is inapposite.

The record shows that delivery of the goods was made December 15, 1979. Foster brought the underlying action for damages more than a year later, on March 18, 1981. Cold Storage filed its cross-complaint for indemnity on August 18, 1981. If measured from the date of delivery, clearly the section 1303(6) one-year statute of limitations has run and the trial court judgment must stand.

■ Under well-established California law, however, a cause of action for equitable indemnity arises only when the indemnitee actually incurs a loss by payment of the underlying claim or judgment; the statute of limitations on such an action does not accrue at the time of the commission of the underlying tort. (*People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 751 [163 Cal.Rptr. 585, 608 P.2d 673; *E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d 505].) The rationale for the rule is apparent, and is explained as follows in *People* ex rel. *Dept. of Transportation* v. *Superior Court, supra,* at page 751 (quoting from *Vegetable Oil Products Co.* v. *Superior Court* (1963) 213 Cal.App.2d 252, 257 [28 Cal.Rptr. 555]): "If it were the law that the statute of limitations starts to run when the . . . [original] injury occurs, the indemnitee's remedy would be most unsatisfactory. Until the amount of the damages was determined by judgment or a compromise with the injured party, the indemnitor would have no way of either measuring or discharging his duty to his indemnitee. . . ."

Our federal courts have applied the same rule of law in maritime cases generally. In *Complaint of American Export Lines, Inc.* (S.D.N.Y. 1983) 568 F.Supp. 956, at page 962, the court stated: "It is generally held that a cause of action for indemnity based on tort is separate and distinct from a cause of action for the underlying tort; the indemnity cause of action accrues not when the tort is committed, but when the underlying claim, a judgment on that claim, or a settlement of that claim is paid or discharged. [Citations.]"[1]

■ In actions brought under the authority of COGSA, the courts have also ruled with near uniformity ruled that indemnity actions are not subject to the statute of limitations stated in section 1303(6). (See *Engineering Equipment Co.* v. *S.S. Selene* (S.D.N.Y. 1978) 446 F.Supp. 706, 710.) The "loss or damage" mentioned in the statute has been interpreted as referring only to direct damage to cargo and not to indemnity claims. (*Francosteel Corp.* v. *N. V. Nederlandsch Amerikaansche* (1967) 249 Cal.App.2d 880, 891 [57 Cal.Rptr. 867]; *Federal Com. & Nav. Co.* v. *Calumet Harbor Terminals* (7th Cir. 1976) 542 F.2d 437, 441; *States Steamship Co.* v. *American Smelting & Refining Co.* (9th Cir. 1964) 339 F.2d 66, 69-70.) Consequently, in federal practice, while a claim for cargo damages runs

---

[1] The separate and distinct nature of the indemnity action from the tort or contract action which underlies it is well established. (See *Hercules, Inc.* v. *Stevens Shipping Co., Inc.* (5th Cir. 1983) 698 F.2d 726, 732; *ITT Rayonier, Inc.* v. *Southeastern Maritime Co.* (5th Cir. 1980) 620 F.2d 512, 514; *Prudential Lines, Inc.* v. *General Tire Intern. Co.* (S.D.N.Y. 1977) 440 F.Supp. 556, 560.)

from the date of *delivery* pursuant to section 1303(6), a cause of action for indemnity, although it originates in the same loss or damage suffered by the cargo owner, does not have legal existence until the indemnitee has incurred a loss by paying the underlying claim or judgment. (*Hercules, Inc.* v. *Stevens Shipping Co., Inc., supra,* 698 F.2d 726, 733; *Prudential Lines, Inc.* v. *General Tire Intern. Co., supra,* 440 F.Supp. 556, 558; *Cerro Sales Corp.* v. *Atlantic Marine Enterprises, Inc.* (S.D.N.Y. 1975) 403 F.Supp. 562, 566; *Marubeni-Iida (A.), Inc.* v. *Toko Kaiun Kabushiki Kaisha* (S.D. Tex. 1971) 327 F.Supp. 519, 523.)

Matson essentially relies upon a single case to support its contention that the statute of limitations has run on appellant's indemnity action: *Weinstock Hermanos & Cia. Ltda.* v. *American Aniline & E. Co.* (E.D.Penn. 1967) 285 F.Supp. 424. In *Weinstock,* a buyer of chemicals brought suit for breach of warranty against the seller a year and a half after delivery of the goods. The seller filed a third party complaint for indemnity against the owner of the vessel which the transported the chemicals. The vessel owner's motion for summary judgment was granted on the ground that the one-year statute of limitations of section 1303(6) barred the action for indemnity. The court reasoned as follows: "Whether a claim against a carrier for loss or damage to goods in transit is asserted directly or by way of a claim for indemnification is immaterial, for the limitation period of the Act begins to run, in any event, when the goods are delivered. It is that precise starting point for the filing of suits against the carrier which makes inapplicable to this case the principle that a limitation period begins to run, on indemnity claims, when the indemnitee has suffered loss." (285 F.Supp. at pp. 425-426.)

The *Weinstock* view has been roundly criticized as unworkable and inequitable; it stands as the lone authority for applying the section 1303(6) statute of limitations to indemnity actions. We decline to follow it, for reasons we now discuss.

In a case from the Ninth Circuit, *States Steamship Co.* v. *American Smelting & Refining Co., supra,* 339 F.2d 66, an action by a cargo owner against a carrier to recover salvage costs was characterized as one for implied indemnity and as such not governed by section 1303(6). Concluding that the statute "was intended to apply only to claims which relate *directly* to a breach of a carrier's duty to make timely delivery of the goods in good order and condition" (339 F.2d at p. 68, italics added), the court based its ruling upon the view that "imposing a 'time of delivery' starting date upon actions such as we have before us would give rise to an illogical and often unreasonable situation." (339 F.2d at p. 70.) An indemnitee, the court not-

ed, is not generally in a position to bring suit until actual payment has been made, which rarely coincides with the date of delivery. (*Ibid.*) The court rejected as an undue burden on the indemnitee and the courts the notion that "protective" suits for indemnity could be filed before payment and then stayed indefinitely. (*Ibid.*)

In *Hercules, Inc.* v. *Stevens Shipping Co., Inc., supra,* 698 F.2d 726, the court, overruling its earlier decision in *Grace Lines, Inc.* v. *Central Gulf Steamship Corporation* (5th Cir. 1969) 416 F.2d 977, adopted the same rule that "a claim for indemnity arises only after the party seeking indemnity is held liable." (*Hercules, supra,* at p. 732.) Acknowledging the "substantial criticism" of its holding in *Grace Lines* (*id.,* at p. 731), where, as in *Weinstock* (*Weinstock Hermanos & Cia. Ltda.* v. *American Aniline & E. Co., supra,* 285 F.Supp. 424, the section 1303(6) one-year-from-delivery statute of limitations was applied to an indemnity claim, the court concluded: "We think the better rule is that a cause of action for indemnity arises separately from and after liability has been established." (*Hercules, supra,* at p. 735.)

In so holding, the court in *Hercules* relied principally upon familiar policy considerations. The court noted that section 1303(6) "runs counter to the standard indemnity law" that a cause of action does not arise until there is a determination of liability. (698 F.2d at p. 734.) The "date of delivery" accrual of indemnity actions was also found to conflict with rule 14 of the Federal Rules of Civil Procedure (28 U.S.C.), which encourages broad use of suits for indemnity in admiralty and maritime cases both to avoid multiplicity of actions and to facilitate disposition of the entire subject matter stemming from one set of facts.[2] (698 F.2d at p. 734; see also *ITT Rayonier, Inc.* v. *Southeastern Maritime Co., supra,* 620 F.2d 512, 514, at p. 515.)

Other reasons favoring our conclusion are set forth in *Marubeni-Iida (A.), Inc.* v. *Toko Kaiun Kabushiki Kaisha, supra,* 327 F.Supp. 519, 523, as follows: "[T]he better reasoned decision would not allow the COGSA statute of limitations to bar this suit [for indemnity]. This result would not thwart the purpose of Fed.R.Civ.P., Rule 14 and the historic doctrines of Admiralty Rule 56. It does not minimize the Congressional purpose of the

---

[2]Rule 14, subdivisions (a) and (c) provide, in pertinent part: "(a) . . . At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him . . . .
"(c) . . . When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. . . ."

time limitation of COGSA, for the prevention of the litigation of state suits is accomplished by the fact that the main suit was filed within the time set out in the statute and all claims arose out of the same transaction. [¶] This conclusion would be consistent with the legal concept that the ordinary cause of action for indemnity is separate from the suit for initial liability insofar as time bar periods are concerned. The right of indemnity would accrue once payment was made, and the statute of limitation on [such] an action to enforce that right would not begin to run until payment was made. [Citations.] [¶] It would also alleviate the harsh practicalities of the situation where the original plaintiff files his suit on the day before or the last day of the one-year period, thus not allowing the defendant time to implead a third-party defendant . . . ."

Respondent argues that indemnitees such as appellant can avoid losing indemnity claims to the one-year period of limitations by filing "protective" actions against a carrier before the cargo owner brings suit. (See *Northern Commercial Co.* v. *Lindblom* (9th Cir. 1908) 162 Fed. 250.) The solution seems heuristic and unsatisfactory, as the court found it to be in *States Steamship, supra,* 339 F.2d 66. It places the burden and expense upon the indemnity claimant, rather than upon the cargo owner, to establish the loss before any action is brought by the plaintiff. It forces the indemnity claimant to file a protective suit upon the slightest complaint of loss by a customer, thereby littering court calendars with actions which might never be prosecuted. (*States Steamship Co.* v. *American Smelting & Refining Co., supra,* 339 F.2d at p. 70.)

We accordingly adopt the rule which calculates the period of limitations applicable to appellant's action from the date of payment to the plaintiff in the underlying suit. That rule is consistent with California indemnity law (*People* ex rel. *Dept. of Transportation* v. *Superior Court, supra,* 26 Cal.3d 744, 751-752), and harmonious with federal case law from this circuit (*States Steamship Co.* v. *American Smelting & Refining Co., supra,* 339 F.2d 66, 70). It is as well the prevailing view in the federal courts (*Hercules, Inc.* v. *Stevens Shipping Co., Inc., supra,* 698 F.2d 726; *Federal Com. & Nav. Co.* v. *Calumet Harbor Terminals, supra,* 542 F.2d 437; *Engineering Equipment Co.* v. *S.S. Selene, supra,* 446 F.Supp. 706), and serves sound policy considerations. We hold that appellant has not lost its indemnity claim even though section 1303(6) has extinguished Foster's underlying cause of action against Matson. (*Ryan Co.* v. *Pan-Atlantic Corp.* (1956) 350 U.S. 124, 131-132 [100 L.Ed. 133, 140-141, 76 S.Ct. 232]; *Prudential Lines, Inc.* v. *General Tire Intern. Co., supra,* 440 F.Supp. 556, 559.

The judgment is reversed and the case remanded to the trial court for proceedings not inconsistent with the views expressed herein.[3]

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied January 17, 1985, and respondent's petition for a hearing by the Supreme Court was denied March 28, 1985.

---

[3]In light of our conclusion that section 1303(6) does not apply to appellant's indemnity action, we need not address the issue of whether appellant is a "shipper" within the meaning of COGSA.