Leonard H. Sandler, J.
Early in November, 1964, the plaintiff, Middle East Export Co. (Middle East), acting through a resident agent, purchased 12 bales of rugs in Kerman, Iran. Sometime between the packing of the bales on November 3, 1964 and March 1, 1965, when a trucker employed by Middle East arrived at Pier 10 in New York City to receive the remainder of the hales (5 bales having been previously picked up on February 23, 1965), four of those hales disappeared. No direct explanation of that disappearance was presented by anyone at the trial before me.
This lawsuit commenced when Middle East sued Concordia Line Skibs A/S Hilda Knudson (Concordia) for the value of the missing bales of rugs that, according to that defendants admission, had been received aboard its ship SB Concordia Fonn *272 at Kharramshahr, Iran for shipment to New York under a hill of lading that imposed upon Concordia an obligation for the safekeeping of the merchandise until its delivery to Middle East.
Thereafter, Middle East sued American Stevedores, Inc. (American) for the value of the missing bales on the theory that the bales were lost on Pier 10 in New York while in the care of American which had agreed by contract with Concordia to discharge the New York cargo from the ship and to safeguard1 the cargo until its delivery.
Concordia, likewise contending that the disappearance occurred on Pier 10, acknowledged liability for the loss, but claimed that under the bill of lading its liability was limited to $500 per bale and impleaded American as the party primarily responsible for the loss. Concordia further seeks from American the value of counsel fees and expenses incurred in connection with its defense against Middle East’s lawsuit.
In its defense to the actions against it, American denied that the loss occurred on the pier, disclaimed liability even if the loss were determined to have occurred there, claimed that both actions were untimely, and asserted that it found to be liable its liability should be restricted to $500 per bale.
The above actions were consolidated before trial.
Preliminarily, I grant Concordia’s motion to dismiss the action against its agent, Boise-Griffin Steamship Co., Inc.
The critical factual issue, upon whose resolution depends the character of the legal issues presented, is when and where the four bales disappeared.
Although the evidence is unsatisfactory in various ways, the substantial weight of the evidence points to a disappearance from Pier 10 in New York after the cargo was discharged on February 10, 1965 while the merchandise was in the care of American.
Without repeating the evidence in detail, the fact that 12 bales were received by the ship was satisfactorily established by the bill of lading and connected documents, notwithstanding the absence of direct testimony from anyone who actually tallied the bales on board. (See Israel Commodity Co. v. American-West African Line, 1968 Am. Mar. Cas. 139, affd. 397 F. 2d 170 [3d Cir., 1968], cert. den. sub nom. Lavino Shipping Co. v. American-West African Line, 393 U. S. 978 [1968].) The fact that none of the bales remained on board after discharge in New York was clearly established by witnesses who examined the hatches after that event. The possibility that the missing *273 bales were mistakenly placed on piers at intermediate ports is tenuous, even as to the port where the 12 bales were transferred from one hatch to another.
In view of the other circumstances, it is not necessary here to consider carefully what weight, if any, should be given American’s failure to report the absence of the bales until March 1, 1965. Although American’s sorting sheet at the time of discharge reported the amount and location of the bales to be discharged, the failure to tally the bales in accord with the prevalent custom in the New York port surely limits the force of the inference that can fairly be drawn.
However, some significance may reasonably be accorded American’s failure to note any shortage in its delivery sheet on February 23, 1965 which carefully enumerated by number the 12 bales, and noted that the trucker had received 5 bales as well as the number of each of these.
None of the above is wholly satisfactory, but I think it clear that the evidence, such as it is, points to the conclusion that the loss occurred on the New York pier.
As already noted, Concordia, which claimed that the loss occurred on the pier, acknowledged that it was liable under the bill of lading in view of American’s inability to explain the loss. American however disputes its own liability either to Middle East or to Concordia, claiming that it was in fact not negligent. This position is without merit.
' As a consequence of its contract with Concordia, American assumed the responsibilities of a bailee to the plaintiff. (Israel Commodity Co. v. American-West Africa Line, supra; Baird v. Daly, 57 N. Y. 236 [1874]; 8 Am. Jur. 2d, Bailments, § 243.) The rule is clear that when a bailee fails to deliver bailed property to the Owner, and does not or cannot explain what happened to the property, a presumption of negligence arises (Procter & Gamble Distr. Co. v. Lawrence Amer. Warehousing Corp., 16 N Y 2d 344, 360 [1965]; cf. Alpine Forwarding Co. v. Pennsylvania R. R. Co., 60 F. 2d 734 [2d Cir., 1932]).
As the Court of Appeals noted in the Procter & Gamble case (supra, p. 360) it is profoundly incongruous for a bailee to assert first that it exercised due care and second that it does not know what happened to the property in its custody.
The same presumption of negligence establishes American’s responsibility under its agreement to indemnify Concordia for damages caused Concordia by American’s negligence. (Cf. Israel Commodity Co., supra; David Crystal, Inc. v. Cunard S. S. Co., 339 F. 2d 295 [2d Cir., 1964].)
*274 The most troublesome legal issue presented involves the interpretation and legal effect of the provision of the bill of lading that limited liability to $500 per bale in the absence of any declaration of higher value. It is not seriously disputed that the provision, under the facts as found, limits Concordia’s liability. While its effect on American’s liability was strenuously contested, I find that the bill of lading before me was clearly intended to limit the stevedore’s liability and is effective for that purpose.
In Head Co. v. Krawill Mach. Corp. (359 U. S. 297 [1959]), the Supreme Court held that the section of the United States Carriage of Goods by Sea Act (C.O.G.S.A.) that limited the liability of carriers to $500 per bale in the absence of a declaration of higher value (U. S. Code, tit. 46, § 1304, subd. [5]), did not apply to stevedores. At the same time, the court unmistakably indicated that the carrier and owner could agree in the bill of lading to extend the limitation to the stevedore.
What was suggested in the Herd case was explicitly spelled out in Carle & Montanari v. American Export Ishrandtsen Lines (275 F. Supp. 76 [S.D.N.Y., 1967], affd. 386 F. 2d 839 [2d Cir., 1967], cert. den. 390 U. S. 1013 [1968]).
The controlling rule was stated as follows (275 F. Supp., at p. 78): “ The parties to a bill of lading may extend a contractual benefit to a third party by clearly expressing their intent to do so.”
Interpreting a bill of lading quite similar in form and content to the one before me (although with one substantial difference), the court found the requisite intent to limit the stevedore’s liability.
The bill of lading covering the bales in question here provided in paragraph 1(a) that “ Other than said ship owner or demise charterer, no person, firm or corporation or other legal entity whatsoever (including the master, officers and crew of the vessel and all agents and independent contractors) is or shall be deemed to be liable with respect to the goods as carrier, bailee, or otherwise howsoever in contract or in tort. If however it shall be adjudged that any other than said shipowner or demise charterer is carrier or bailee of the goods or under any responsibility with respect thereto, all limitations of and exonerations from liability provided by law or by the terms hereof shall be available to such other.”
The provisions differ from those construed in the Carle $ Montanari case primarily in the failure to list stevedores specifically as among the independent contractors sought to be *275 exempted from liability. I do not believe that omission is legally significant. It would surely be a remarkable interpretation of the all-embracing language quoted above to conclude that American alone, among all “legal entities” in the universe, was not intended to be covered by the limitations of liability.
Cabot Corp. v. Mormacscan, Moore-McCormack Lines (1969 Am. Mar. Cas. 1378) is not to the contrary. That case went off on a wholly different point, and the discussion relied upon by Middle East involved other language appearing in a very different context.
The remaining issues can be disposed of briefly. American claims that Middle East’s claim is barred by the one-year Statute of Limitations on actions brought under C.O.G.S.A. (U. S. Code, tit. 46, § 1303, subd. [6]). Quite apart from the circumstance that the limitation is not available to stevedores by reasoning analogous to that of the Supreme Court in the Herd case (supra), it is quite clear that C.O.G.S.A. does not control actions with regard to events occurring before loading or after discharge. (U. S. Code, tit. 46, § 1300; 1301, subd. [e]; § 1311; The Monte Iciar, 167 F. 2d 334 [3d Cir., 1948].)
Equally without merit is American’s further claim that Concordia’s impleader action is barred by New York’s three-year Statute of Limitations (CPLR 214, subd. 4). This case is governed by the admiralty doctrine of laches, which in turn is guided in application by the appropriate Statute of Limitations. (See James McWilliams Blue Line v. Esso Standard Oil Co., 1954 Am. Mar. Cas. 1134 [S.D.N.Y., 1954].) Under New York law "a claim for indemnity arises only when the party seeking indemnity has been subjected to liability and has made payment. (Satta v. City of New York, 272 App. Div. 782 [2d Dept., 1947].)
Finally, with regard to Concordia’s claim for counsel fees incurred in defense of the Middle East action, it is not disputed that maritime law sanctions recovery of such fees and expenses. (See David Crystal, Inc. v. Cunard S. S. Co., 339 F. 2d 295, supra.) Nor did American seriously question that Concordia’s counsel accurately described the work done, the time required, and the expenses incurred.
American asks this court in effect to reduce the award for counsel fees on the theory that Concordia’s counsel had understood quite early that Concordia was liable, that the liability was limited to $2,000, and that much of the legal work done was thus unnecessary for the defense.
I note however that Middle East had urged at the trial with some force that the limitation of liability would be inapplicable if the court found that the four bales had been delivered at an *276 intermediate port, or had remained on board after the discharge in New York — both factual propositions urged by American.
Moreover, it need hardly he underlined that a lawyer, where confident expectation of a favorable result leads to a casual and inattentive defense of his client, is following a familiar road to disaster both for the client and the lawyer. Concordia’s counsel were not required to adopt such a dubious policy.
Accordingly, I find (1) for Middle Bast in the sum of $2,000, with interest from March 1, 1965 against Concordia and American; (2) for Concordia for whatever part of the first named amount is paid to Middle East by Concordia; and (3) for Concordia in the amount of $3,250, with interest from April 30, 1969.
Judgment is to be entered accordingly.