**FEDERAL COMMERCE & NAVIGATION CO., LTD.,** Plaintiff-Appellant,

v.

**CALUMET HARBOR TERMINALS, INC., Defendant-Appellee.**

Nos. 75–1625, 75–1626.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1976.
Decided Sept. 30, 1976.

Daniel K. Schlorf, Chicago, Ill., for plaintiff-appellant.

Thomas W. Conklin, John F. Horvath, Chicago, Ill., for defendant-appellee.

Before HASTINGS and SWYGERT, Circuit Judges, and EAST,* District Judge.

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

EAST, District Judge.

In each of the above causes in admiralty (Fed.R.Civ.P. 9(h)) for indemnity, consolidated on appeal, the District Court granted the defendant-appellee (Calumet) summary judgments dismissing the causes as a matter of law. The plaintiff-appellant (Federal) appeals. We reverse and remand.

The District Court predicated its decision of dismissal upon a time bar and a limitation of liability provision in Calumet's Terminal Tariff No. 3. The single issue on review in each of the causes is:

> Did the District Court err as a matter of law in applying and enforcing the time bar and limitation of liability provisions of the tariff against Federal's alleged claims for indemnity?

Federal, for its cause in each case, alleges that:

Federal is a Canadian corporation engaged as a charter and operator of vessels engaged in the carriage of goods for hire between ports on the High Seas and the Great Lakes, including Chicago, Illinois; [1]

Calumet is an Illinois corporation operating as a *stevedore* and a *terminal operator* in the Port of Chicago;

Calumet agreed with Federal to perform stevedoring and terminal services for cargo to be discharged from Federal's vessel at Calumet's berth in Chicago on or about November 30—December 2, 1971 in Appeal No. 75–1625 (District Court cause No. 74 C 545) and on or about November 29—December 1, 1971 in Appeal No. 75–1626 (District Court cause No. 74 C 924);

Federal agreed to and did pay the charges for such services as rendered by Calumet;

Calumet breached its stevedoring and terminal services contract, together with its implied in law warranty to Federal by causing and permitting certain cargo to be bent, torn, rusted and otherwise damaged and destroyed, obligating Federal for liabil-

---

1. Federal appears to be a "common carrier by water in foreign commerce" as defined in the Shipping Act, 1916, 46 U.S.C. §§ 801–842.

ity to the owner of the cargo for the losses sustained as a result of Calumet's breach;

The owner of the damaged cargo made a claim against Federal for the damages to its cargo and Federal settled and compromised the claim and seeks indemnification from Calumet for the amount of the settlement or so much thereof as Calumet is ultimately liable; and

Due notices of the claim against and the settlement by Federal were given to Calumet on December 4, 1972 and January 28, 1973 in District Court cause No. 74 C 545, and on August 13, 1973 and September 12, 1973 in District Court cause No. 74 C 924; notwithstanding such notices Calumet refused to participate in the settlement or otherwise honor its warranty and obligation in indemnity.

Calumet, in its pleadings, admits the contractual arrangements, denies the breach, and counters with an affirmative defense to the effect that each of the causes are time barred and otherwise limited under the provisions of Item 170(c) [2] and Item 170(d),[3] respectively, of its Terminal Tariff No. 3 duly filed with the Federal Maritime Commission (Commission) pursuant to the Shipping Act, 1916, 46 U.S.C. §§ 801–842 (Shipping Act) and specifically the Commission's General Order 15 (30 C.F.R. 12682, October 5, 1965). Calumet, based upon those provisions, moved for summary judgment.

General Order 15 purports to have been issued by the Commission pursuant to the authority granted it under 46 U.S.C. § 841a and, in its pertinent parts, provides:

"Every person . . . carrying on the business of furnishing wharfage, dock, warehouse, or other terminal facilities . . . shall file in duplicate with the Bureau of Domestic Regulation, Federal Maritime Commission, and shall keep open to public inspection at all its places of business a schedule or tariff showing all its rates, charges, rules, and regulations relating to or connected with the receiving, handling, storing, and/or delivering of property at its terminal facilities . . ."

At the outset, it must be noted that Calumet in its performance of its contract with Federal wore two hats: Presumably, first, the hat of a stevedore in discharging the vessels' cargo with admiralty and maritime duties to the vessels and Federal; and, secondly, that of a wharfage, dock, warehouse or other terminal facility operator, owing wholly separate and distinct duties under bailment to the owner of the cargo.[4]

It is manifest from a perusal of the Shipping Act that its scheme of things in its pertinent parts is to regulate and provide for fair and reasonable rates and charges for services of carriers and "wharfage, dock, warehouse, or other terminal facilities" operators and the prevention of discrimination in and rebating of such rates and charges. Nowhere in the language of the Shipping Act or the General Order 15 appears any language, express or implied, regarding any regulatory measures concerning stevedoring services or limitations upon admiralty causes for indemnification from a defaulting stevedore.

The District Court, in granting the summary judgments of dismissal as a matter of law and holding that Federal's causes were

---

2. No claim will be recognized for loss or damage to cargo unless notice of such loss or damage is given to Terminal Operator within three (3) days of delivery of cargo to vessel owner or consignee. Suits must be filed within one year of delivery of cargo, or within one year of the date when cargo should have been delivered.

3. Iron and steel rates are based on open uncovered handling and storage, and the Terminal Operator will not be liable for any loss, expense or damage, including rusting, pitting, etc., whatsoever, caused or contributed to by such cargo being in unprotected areas.

4. The Commission's rules require that the terminal tariffs define "point of rest" as "that area on the terminal facility which is assigned for the receipt of inbound cargo from the ship and from which inbound cargo may be delivered to the consignee." (46 C.F.R. 533.6(c)). Section 533.6(d)(6) defines "handling" as "the service of physically moving cargo between point of rest and any place on the terminal facility, other than the end of ship's tackle." These definitions recognize the distinction between stevedoring services and terminal services.

time barred and limited under Items 170(c) and (d), relied upon the following authorities: *Southern Ry. v. Prescott*, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836 (1916); *Hartness v. Iberia & V. R. Co.*, 297 F. 622 (E.D.La. 1924); *White v. Atchison, Topeka & Santa Fe Ry.*, 149 F.2d 919 (9th Cir. 1945); *Rorie v. City of Galveston*, 471 S.W.2d 789 (Sup. Ct.Tex.1971), *cert. denied*, 405 U.S. 988, 92 S.Ct. 1250, 31 L.Ed.2d 454 (1972); and *City of Galveston v. Kerr Steamship Co.*, 362 F.Supp. 289 (S.D.Tex.1973), *aff'd.*, 503 F.2d 1401 (5th Cir. 1974).

We conclude that the District Court misapplied the rationale of those authorities to Federal's claims and erred in granting the said summary judgments as a matter of law.

In *Southern*, a consignee sought to recover from the Railway for loss by fire of a part of a shipment after the shipment had arrived at its destination, receipted for and payment of freight charges by the consignee but left in the possession of the carrier for later pickup. The Supreme Court held that the continued holding of a part of the shipment by Southern for later pickup was a terminal service forming a part of the transportation under the Interstate Commerce Act. Therefore, the provisions of the bill of lading limiting liability to the rate related declared value were applicable. We deem the authority to be inapposite to Federal's claims against the alleged defaulting stevedore whose services held no rate relationship under Terminal Tariff No. 3. The relationship of the parties in *Southern* was that of consignee versus carrier as original parties to the rate related limiting terms of the bill of lading.

In *Hartness*, a shipper sought recovery from the railroad for losses due to a delayed delivery of a shipment. The bill of lading carried a provision of a time bar shorter than the state statute of limitations to bring an action. The railroad's published tariff provided for the time bar provision in the bill of lading. Just as in *Southern*, the parties were the original parties to the contractual terms of the bill of lading and were bound thereto.

In *White*, the Railway had established tariff freight rates and charges as authorized by § 6(7), Part 1, of the Interstate Commerce Act (49 U.S.C. § 6(7)) and sought to recover unpaid freight charges from a defaulting shipper. The rationale of *White* simply holds no bearing upon the issues here.

*Rorie* involved a longshoreman's claim against the city as a terminal operator and the shipowner for injuries sustained in connection with the operation of a shore hoist owned by the city but leased to the stevedore. The city and the shipowner sought indemnity against the stevedore. A tariff filed by the city with the Commission provided in effect that the lessee of the crane was responsible for the operation thereof and assumed all risks. The court simply held, so far as we are concerned, that the city and the stevedore as original parties to the lease were bound by the terms of their lease made pursuant to the terms of the tariff, and the city was allowed indemnity. The holding is meaningless to the issues here.

The *City of Galveston* involves simply an action by the terminal operator to recover pier demurrage pursuant to a rate tariff filed with the Commission and has no application to the issues here.

■ The record on appeal gives no verified facts or circumstances surrounding the who, when, or where of the mishap that allegedly caused the damage to the cargo, specifically at the hands of Calumet, the stevedore, or Calumet, the terminal operator. In any case, we hold that neither Item 170(c) nor Item 170(d) of Calumet's Terminal Tariff No. 3 is, in the absence of actual notice or contract, applicable or enforceable to bar or restrict the alleged claims of Federal for indemnity.

"Concededly, but for the tariff, [Item 170(c), the doctrine of laches or the appropriate statutes of limitation would not be affected nor would Item 170(d) restrict the common law or statutory duties of the terminal operator]. [Calumet] says that the tariff gave constructive notice to

[Federal of the restricted time limitations and liability] under the provisions of the Shipping Act . . . .. It is settled, however, that such filing gives constructive notice only ' . . . of everything contained in such published tariff schedules which is by law required to be therein inserted . . .'." *Port of Tacoma v. S.S. Duval,* 364 F.2d 615, 617 (9th Cir. 1966), citing *Pacific S.S. Co. v. Cackette,* 8 F.2d 259, 260 (9th Cir. 1925), *cert. denied,* 269 U.S. 586, 46 S.Ct. 203, 70 L.Ed. 426 (1925).

■ As the court could not in *Pacific,* we cannot here find any provision of the Shipping Act which authorizes the time limitation and restriction of liability under the tariff Items 170(c) and 170(d), respectively, as against a shipowner. The items are simply not rate or charge related under the scheme of the Shipping Act. *Port of Tacoma v. S.S. Duval, supra; City of Nome v. Alaska Steamship Co.,* 321 F.Supp. 1063 (D.Alas.1971); *Bernard v. U. S. Aircoach,* 117 F.Supp. 134 (S.D.Cal.1953). *See Middle Atlantic Conference v. United States,* 353 F.Supp. 1109, 1122 n. 41 (D.D.C.1972).

This court has laid the foundation for Federal's claim for indemnity against the alleged defaulting Calumet as a stevedore in *Bagrowski v. American Export Isbrandtsen Lines, Inc.,* 440 F.2d 502, at 504–05 (7th Cir. 1971), with the following language:

" . . . it can be said that [*Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956)] has fashioned a rule that every stevedoring contract contains an implied warranty running from the stevedore-employer to the shipowner that the stevedoring operations will be performed in a safe and workmanlike manner."

"[The implied warranty running from the stevedore to the shipowner] is of the essence of [the stevedore's] stevedoring contract. It is [the stevedore's] warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product." *Ryan, supra* at 133–34, 76 S.Ct. at 237.

■ The warranty of workmanlike service extends to cargo damage as well as personal injury. *St. Paul Fire and Marine Insurance Co. v. Vessel TRINITY,* 1967 AMC 1768 (C.D.Cal.1967); and *David Crystal, Ins. v. Cunard Steam-Ship Co.,* 339 F.2d 295 (2d Cir. 1964).

■■ We further hold that the District Court erred in concluding that as a matter of law the time limitation under Item 170(c) commenced at the date of the delivery and discovery of the alleged damage to the cargo. First, time bar limitations, if any, upon claims in admiralty are governed by the equitable doctrine of laches in consideration of the appropriate state statute of limitations. *Middle East Export Co. v. Concordia Line,* 64 Misc.2d 270, 314 N.Y.S.2d 390, 1971 AMC 64 (S.D.N.Y.); and *James McWilliams Blue Line v. Esso Standard Oil Co.,* 123 F.Supp. 824, 1954 AMC 1134 (S.D.N.Y.). Secondly, a right of indemnity does not accrue until one asserting it suffers a loss by being held liable in damages. *Firestone International Company v. Isthmian Lines, Inc.,* 1964 AMC 1284 (S.D.N.Y.). It follows that Federal's claim for indemnity against the stevedore Calumet is separate from the claim of the cargo owner for the initial cargo damage as far as time bar periods are concerned.

"In actions that involve damage directly to the cargo or relate directly to the cargo the statute of limitations traditionally and logically begins to run at the time of delivery. It is at this time that the shipper becomes aware of 'loss or damage' and generally at this time that the cause of action accrues. Such is not the case with the usual indemnity claim, where a cause of action does not accrue until the indemnity has made actual payment." *States Steamship Co. v. American Smelting & Refining Co.,* 339 F.2d 66, at 69–70 (9th Cir. 1964), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1109, 14 L.Ed.2d 155 (1965). *See Marubeni-Iida (America), Inc. v. Toko Kaiun Kabushiki Kaisha,* 327 F.Supp. 519 (S.D.Tex.1971); and *Franco-*

**442**

*steel Corporation v. S.S. Tien Cheung*, 375 F.Supp. 794 (S.D.N.Y.1973).

Calumet urges that the rationale of *Grace Lines, Inc. v. Central Gulf Steamship Corp.*, 416 F.2d 977 (5th Cir. 1969), *cert. denied*, 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970), supports a contra holding and should be applied here. It is manifest to us from a reading of *Grace Lines* that the claims presented are inapposite to Federal's claims. Furthermore, if *Grace Lines* can be read as a contra holding to our conclusions expressed above, we view the rationale of *Grace Lines* to be a minority view and we decline to adopt it.

The summary judgment of dismissal entered in District Court No. 75–1625 and District Court No. 75–1626 on May 14, 1975 is each reversed and set aside, and the several causes are remanded to the District Court for further proceedings consistent with the foregoing opinion. Circuit Rule 18 applies.

REVERSED AND REMANDED.