**UNITED STATES STEEL INTERNATIONAL, INC., Plaintiff,**

v.

**SS. LASH ITALIA, etc., and Prudential Lines, Inc., Defendants and Third Party Plaintiffs,**

v.

**The NORFOLK AND WESTERN RAILWAY COMPANY, Third Party Defendant.**

**No. 76 Civ. 414–CSH.**

United States District Court,
S. D. New York.

July 18, 1977.

Graham & Simon, P.C., New York City, for B.F. Goodrich; Jeffrey Lee Neandross, New York City, of counsel.

Bleakley, Platt, Schmidt & Fritz, New York City, for Louisville & Nashville; Hyman Hillenbrand, New York City, of counsel.

Lilly, Sullivan & Purcell, New York City, for Prudential Lines; George Sullivan, New York City, of counsel.

Bleakley, Platt, Schmidt & Fritz, New York City, for Third-Party Norfolk; Hyman Hillenbrand, New York City, of counsel.

## MEMORANDUM DECISION AND ORDER

HAIGHT, District Judge.

Plaintiff United States Steel International, Inc. ("U.S. Steel") seeks recovery for contract and cargo damage arising out of a transatlantic shipment of steel by defendant Prudential Lines, Inc. Paragraphs five (5) and six (6) of plaintiff's complaint set forth the relevant factual information underlying plaintiff's claim:

"5. On or about January 22, 1975 plaintiff delivered 496 packages of electrical steel sheets to defendant as common carrier at the port of Norfolk in good condition for delivery to Constanza, Roumania in consideration of an agreed freight and pursuant to the valid terms of bills of lading issued by defendant and the S.S. 'LASH ITALIA'.

"6. Thereafter the S.S. 'LASH ITALIA' arrived at Constanza where the cargo was delivered in a damaged condition."

On March 7, 1977, defendant Prudential, as a third party plaintiff, served a third party summons and complaint on Norfolk & Western Railway Company ("N & W"), who it is alleged:

"[w]as the inland carrier of part, or all, of the cargo described in paragraph 5 of the plaintiff's Complaint and delivered such cargo [to] the port of Norfolk where it was loaded aboard the third party plaintiff's vessels; and, [that] if the plaintiff's cargo was damaged as alleged in paragraph 6 of the Complaint, then such dam-

age was due in whole, or in part, to the fault or neglect or want of due care of the Norfolk & Western Railway Co. . . ." (See ¶¶ five (5) and six (6) of Prudential's third-party complaint).

Issue was joined on April 29, 1977; and N & W now moves for summary judgment pursuant to Fed.R.Civ.Proc. 56, asserting that the claim for indemnity or contribution averred in the third party complaint is time barred under Section 2(b) of the Bill of Lading Contract issued by N & W to U.S. Steel. Section 2(b) provides that:

"As a condition precedent to recovery, claims must be filed in writing with the receiving or delivery carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable and such claims will not be paid."

The above-cited language appears in the form approved by the Interstate Commerce Commission, and is used by all common carrier railroads engaged in interstate commerce. See Section 20(11), commonly known as the Carmack Amendment (set forth verbatim, *infra* ).

This Court need not elaborate on the fact that U.S. Steel did not file a written claim pursuant to Section 2(b) of the bill of lading—a fact which Prudential does not dispute. See pages 2 and 3 of the Sullivan affidavit. Such a failure, even if unintentional, would strictly preclude U.S. Steel from succeeding in a cause of action for damages in a court of law. See *B. A. Walterman v. Pennsylvania Railroad Company*, 295 F.2d 627 (6th Cir. 1961).

Prudential, on the other hand, asserts that it was not a party to the Bill of Lading Contract between U.S. Steel and N & W, and is therefore not bound by the conditions precedent to suit set forth in paragraph 2(b). Additionally, Prudential urges that since its third party complaint speaks of indemnity, the statute of limitations does not commence to run until Prudential is required to make payment to U.S. Steel for the damages alleged.

In response to the statute of limitations argument pressed by Prudential, N & W directs this Court to three recent decisions (*Brumley-Donaldson Co., Inc. v. Shipping Corp. of India, Ltd., et ano.*, (S.D.Ala. no date) 7020–72H; *Yeromex v. S.S. Tendo v. Maritime Containerline v. Old Dominion Freight Lines*, 75 Civ. 376 (S.D.N.Y. Pollack, J.); *Union Carbide v. Lifschultz Fast Freight v. Union Pacific Railroad Company*, 71 C 2379 (Ill.1972)—all involving third party actions by either a steamship company or freight forwarder against a railroad company—which held that a claim for indemnity is governed by the restrictions contained in the Carmack Amendment, 49 U.S.C.A. § 20(11). (Two of these decisions which are unpublished, are set forth in their entirety in the footnotes.) [1] In other words, the nine

---

1. *Brumley-Donaldson Co., Inc. v. Shipping Corp. of India, Ltd. et ano.* (citation in the text)
    "CONCLUSIONS OF LAW
    1. The Court has jurisdiction over this cause under Title 28, U.S.C., Section 1331 and Section 1333.
    2. The only action that can be maintained for transit damage to an interstate shipment is that rising under Federal law, the *Carmack Amendment*, 49 U.S.C.A., Section 20(11) and

is exclusive of all other remedies. *Admas Express v. Croninger*, (1913) 226 U.S. 491 [33 S.Ct. 148], 57 Laws Ed. 314; *St. Louis & San Francisco Railroad Company v. Mounts*, (1916) 241 U.S. 654 [36 S.Ct. 725, 60 L.Ed. 1223]; *Georgia F. [and] A. Railroad Company v. Blish Milling Company*, (1916) 241 U.S. 190 [36 S.Ct. 541, 60 L.Ed. 948].
    3. A claim for transit damage to property must be filed against the carrier within 9

months' notice of claim provision of the Carmack Amendment inures to the benefit of the carrier, and no claim, whether for indemnity or otherwise, can be asserted unless a written claim is made with the carrier within nine months after delivery.

Prudential's reliance on *Federal Commerce & Navigation Co. Ltd. v. Calumet Harbor Terminals Inc.*, 542 F.2d 437 (7th Cir. 1976) is inapposite to the instant discussion. The Court of Appeals in *Federal Commerce* reversed a lower court ruling granting summary judgment to a third party defendant on a claim for indemnity.

The facts in *Federal Commerce* were straightforward: Federal was a charterer and operator of vessels engaged in the carriage of goods for hire between ports on the high seas and the Great Lakes, including Chicago, Illinois. Federal retained Calumet Harbor Terminals Inc. to perform stevedoring and terminal services for cargo to be discharged from Federal's vessel at Chicago. During the period November 30–December 2, 1971, certain cargo carried aboard the Federal vessel was damaged as the result of improper handling by Calumet. The owner of the damaged cargo made a claim

months after delivery of the property at destination. *Chicago M. St. P. and P. R. Co. v. Acme Fast Freight*, (1949) 336 U.S. 465 [69 S.Ct. 692, 93 L.Ed. 817]; *Georgia Florida and Alabama Railway Company v. Blish Milling Company, supra.*

4. Provisions of the Bill of Lading have the effect of law from which neither the carrier nor their customers may deviate. *Chicago and AR Company v. Kirby*, 225 U.S. 155 [32 S.Ct. 648, 56 L.Ed. 1033]; *Kansas City Southern Railway v. Carl*, 227 U.S. 639 [33 S.Ct. 391, 57 L.Ed. 683]; *Phillips v. Grand Trunk Railway*, 236 U.S. 662 [35 S.Ct. 444, 59 L.Ed. 774]; *Southern Railway v. Prescott*, 240 U.S. 632 [36 S.Ct. 469, 60 L.Ed. 836].

5. The shipper may not avoid the claim and suit limitations by merely designating the form of action as one other than an action for breach of contract of carriage. *Georgia F. [and] A. Railway Company v. Blish Milling Company, supra; Chicago M. and St. P. and P. R. v. Acme Fast Freight*, (1949) 226 [336] U.S. 465 [69 S.Ct. 692, 93 L.Ed. 817]; *American Synthetic Rubber Corporation v. L & N Railroad Company*, (Cir. 6th 1970) 422 F.2d 462; *Weinstock Hermanos and Cia Ltda. v. American Analine [Aniline] and Extract Company Inc. v. Grace Line, Inc.*, (E.D.Pa. 1967) 285 F.Supp. 424.

6. The Third Party Plaintiff having failed to present its claim within nine months from the date of delivery of the cargo in Mobile, Alabama, its claim against the third party defendant is therefor barred."

*Yeromex v. S.S. Tendo v. Maritime Containerline v. Old Dominion Freight Lines*, Pollack, J. (citation in the text)

"THE COURT: In addition to the matters that have been stipulated to, the Court makes the following findings of fact herein Namely, that the cargo in question was received by Old Dominion Freight Lines with the containers in apparent good order and condition; that Old Dominion Freight Lines issued a bill of lading number 503616 dated January 24, 1974, which indicated that the cargo in question was delivered by Old Dominion Freight Lines on or about January 28, 1974, to the pier in Norfolk with containers in a damaged condition that upon delivery of the cargo at the pier and on or about January 29, 1974, by Old Dominion Freight Lines into the custody of the agent of Maritime Container Lines, Ltd., exceptions were taken on the face of the truckers waybills by Maritime's agent, and, 'All bundles mashed and torn and bands broken.'

That the cargo in the hands of Old Dominion Freight Lines moved on a shipper's load and count basis; that no claim was filed by or on behalf of the Maritime or anyone else against or with Old Dominion Freight Lines within nine months after Dominion's delivery of the cargo to Maritime's agent; that the uniform bill of lading contract terms and conditions which apply to this case provide, in Section 2B that as a condition precedent to recovery claims must be filed in writing with the delivering carrier or carrier issuing a bill of lading or carrier on whose line the loss, damage, injury, or delay occurred or carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after delivery of the property at the port of export, and suits on such claims must be instituted against a carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant of disallowance of the claim.

Further, where claims are not filed or suits are not instituted thereon in accordance with the foregoing, no carrier shall be liable and no such claims will be paid.

Accordingly, the Court concludes that the claim of the third party plaintiff, Maritime, against the third party defendant, Old Dominion Freight Lines, is dismissed on the merits on the ground that the claim asserted herein, if indeed it has any validity was not made timely."

*Union Carbide v. Lifschultz Fast Freight v. Union Pacific Railroad Company*, (citation in text), copy of opinion is unavailable.

against Federal. After settling the claim, Federal sought indemnification from Calumet, who objected, citing Item 170(c) and 170(d) of its Terminal Tariff No. 3, duly filed with the Federal Maritime Commission pursuant to the Shipping Act, 1916, 46 U.S.C. §§ 801–842, and General Order 15 of the Federal Maritime Commission. Item 170(c) of the above-noted tariff contained a limitation of liability proviso which provided that:

"No claim will be recognized for loss or damage to cargo unless notice of such loss or damage is given to Terminal Operator within three (3) days of delivery of cargo to vessel owner or consignee. Suits must be filed within one year of delivery of cargo, or within one year of the date when cargo should have been delivered."

Having failed to fulfill the conditions set forth in Item 170(c), Federal's suit against Calumet was dismissed. In reversing, the Court of Appeals noted:

"It is manifest from a perusal of the Shipping Act that its scheme of things in its pertinent parts is to regulate and provide for fair and reasonable rates and charges for services of carriers and 'wharfage, dock, warehouse, or other terminal facilities' operators and the prevention of discrimination in and rebating of such rates and charges. *Nowhere in the language of the Shipping Act or the General Order 15 appears any language, express or implied, regarding any regulatory measures concerning stevedoring services or limitations upon admiralty causes for indemnification from a defaulting stevedore.*" (emphasis added) (542 F.2d 437 at 439).

Further on, the court observes that:

"The record on appeal gives no verified facts or circumstances surrounding the who, when, or where of the mishap that allegedly caused the damage to the cargo, specifically at the hands of Calumet, the stevedore, or Calumet, the terminal operator. In any case, we hold that neither Item 170(c) nor Item 170(d) of Calumet's Terminal Tariff No. 3 is, in the absence of actual notice or contract, applicable or

enforceable to bar or restrict the alleged claims of Federal for indemnity.

"Concededly, but for the tariff, [Item 170(c), the doctrine of laches or the appropriate statutes of limitation would not be affected nor would Item 170(d) restrict the common law or statutory duties of the terminal operator]. [Calumet] says that the tariff gave constructive notice to [Federal of the restricted time limitations and liability] under the provisions of the Shipping Act . . . . It is settled however, that such filing gives constructive notice only '. . . of everything contained in such published tariff schedules which is by law required to be therein inserted . . .' *Port of Tacoma v. S.S. Duval*, 364 F.2d 615, 617 (9th Cir. 1966), citing *Pacific S.S. Co. v. Cackette*, 8 F.2d 259, 260 (9th Cir. 1925), cert. denied, 269 U.S. 586, 46 S.Ct. 203, 70 L.Ed. 426 (1925).

"As the court could not in Pacific, we cannot here find any provision of the Shipping Act which authorizes the time limitation and restriction of liability under the tariff Items 170(c) and 170(d), respectively, as against a shipowner. The items are simply not rate or charge related under the scheme of the Shipping Act. *Port of Tacoma v. S.S. Duval, supra; City of Nome v. Alaska Steamship Co.*, 321 F.Supp. 1063 (D.Alaska 1971); *Bernard v. U.S. Aircoach*, 117 F.Supp. 134 (S.D.Cal. 1953). See *Middle Atlantic Conference v. United States*, 353 F.Supp. 1109, 1122 n. 41 (D.D.C.1972) . . .

\* \* \* \* \* \*

"*We further hold that the District Court erred in concluding that as a matter of law the time limitation under Item 170(c) commenced at the date of the delivery and discovery of the alleged damage to the cargo. First, time bar limitations, if any, upon claims in admiralty are governed by the equitable doctrine of laches in consideration of the appropriate state statute of limitations. Middle East Export Co. v. Concordia Line*, 64 Misc.2d 270, 314 N.Y.S.2d 390, 1971 AMC 64 (S.D. N.Y.); and *James Mc Williams Blue Line*

*v. Esso Standard Oil Co.*, 123 F.Supp. 824, 1954 AMC 1134 (S.D.N.Y.)." (emphasis added) (542 F.2d at 440–441).

Clearly, the above-cited language must be contrasted with the facts of the instant case. Unlike the limitation of liability provisions in *Federal Commerce*, Section 2(b) of the U.S. Steel-N & W Bill of Lading contains language expressly permitted by Congress in § 20(11) of the Interstate Commerce Act, 49 U.S.C.A. § 20(11) (the Carmack Amendment), which provides:

". . . That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice . . ."

And, the provisions of the uniform domestic straight bill of lading, under which the shipment at bar moved, are approved and authorized by the Interstate Commerce Commission, 14 I.C.C. 346, 52 I.C.C. 671 and 64 I.C.C. 357.

Secondly, the basis for indemnity in the instant case concerns damage to cargo while being transported by rail, a mode of transportation which is self-evidently non-maritime in nature. Laches, therefore, does not enter into the instant discussion, and *Federal Commerce* is clearly distinguishable on that basis alone.

█ Clearly, the authorities cited *supra*, especially Judge Pollack's decision in *Yeromex v. S.S. Tendo v. Maritime Containerline v. Old Dominion Freight Lines*, dealing with indemnity claims against a third party defendant railroad carrier under the Carmack Amendment, are appropriate sources of *stare decisis* to guide this Court herein. I conclude, therefore, that if Prudential is to defeat N & W's instant application, it must be established that a notice of claim was filed with N & W within nine months after delivery of the damaged cargo in question.

█ The only event which can arguably be said to have afforded N & W notice of alleged damage to the cargo under discussion took place on the date—January 22, 1975—that the cargo was removed from N & W's railroad cars for loading aboard the S.S. LASH ITALIA. On that day, one William Raccioppi, a marine surveyor employed by U.S. Steel, made certain notations on N & W's tallies, setting forth the condition of the goods upon arrival at Norfolk. Those notations, attached as Ex. D to Prudential's Affidavit in Opposition, clearly set forth various damages to the cargo. However, the instant record is devoid of a subsequent notice of claim by either U.S. Steel or Prudential, except for a "vouching in" letter sent by Prudential to N & W on December 27, 1976. Assuming, *arguendo*, that piece of correspondence could be taken as a claim, it was clearly untimely under the nine-month condition contained in provision 2(b) of the Bill of Lading, the alleged cargo damage having occurred in January, 1975.

Equally unavailing to Prudential, in its quest to show a tolling of the nine months' restriction, are the notations made by Mr. Raccioppi. It is well settled, as Judge Metzner observed in *American Greetings Corp. v. Westransco Freight Co. Inc.*, 75 Civ. 5139 (S.D.N.Y.1976), aff'd without opinion, 556 F.2d 554 (2d Cir. 3/16/77), that the requirement of the filing of a written claim remains the law. It may be informal, but it must indicate an intention to claim damages. See *American Rubber Corp. v. Louisville and Nashville R.R.*, 422 F.2d 462 (6th Cir. 1970).

The Raccioppi notations, *prima facie*, do not manifest an intention to claim damages; on the contrary, U.S. Steel never followed up the Raccioppi observations with a claim letter, nor has it included N & W as a party-defendant herein. Accordingly, no notice of claim has been filed with N & W during the period so provided by the Bill of Lading.

In view of the foregoing, I must grant N & W's motion for summary judgment.

It is So Ordered.