SANKYO SEIKI (AMERICA), INC., Plaintiff,

v.

S.S. "KOREAN LEADER", her engines, boilers, etc.,

v.

ORIENT OVERSEAS CONTAINER LINE, INC., and Korean Shipping Corp., Ltd., Defendants and Third-Party Plaintiffs,

v.

CONSOLIDATED RAIL CORPORATION (CONRAIL), Burlington Northern, Inc., Delaware and Hudson Railway Co., and Norfolk and Western Railway Co., Third-Party Defendants.

No. 81 Civ. 3071 (CBM).

United States District Court, S.D. New York.

Oct. 26, 1982.*

---

* Final typed copy of memorandum opinion filed September 1, 1982.

Dwyer, Peltz & Walker by Alexander Peltz, New York City, for plaintiff.

Dougherty, Ryan, Mahoney, Pellegrino Giuffra & Zambito by John Ciraldo, New York City, for defendants and third-party plaintiffs.

Bleakley, Platt, Remsen, Millham & Curran by Hyman Hillenbrand, Kenneth Fremont, New York City, for Third-Party Defendants, CONRAIL, Burlington Northern, Inc., Norfolk and Western Ry. Co.

Kenga M. Lachapelle, Albany, N.Y., for third-party defendant Delaware and Hudson Ry. Co.

Richard H. Stokes, Forest Hills, N.Y., for third-party defendants.

## MEMORANDUM OPINION

MOTLEY, Chief Judge.

Plaintiff and third-party defendants moved, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment against defendants. For the reasons set forth below, both motions are granted.

*Facts*

Plaintiff moves for summary judgment for the short delivery of 113 cartons of

audio components by defendants. The affidavits and exhibits annexed thereto disclose the following facts.

On or about October 28, 1977, plaintiff tendered at Yokohama, Japan a shipment of audio components for carriage by defendants. (Def.Ans. ¶ 5). The goods were "stuffed" by defendants into container No. OOCL–260409, seal No. OOCL–52222, and loaded aboard the S.S. Korean Leader, operated by defendants. (Def.Ans. ¶¶ 3, 6.) An intermodal bill of lading No. OOCL–005M, dated October 31, 1977, was concededly issued by or on behalf of defendants. (Def. Ans. ¶ 5; Def.Ans. to Pl.Interr. ¶ 1). By the terms of the bill of lading, defendants agreed to carry the goods "by ocean vessel between port of loading [Yokohama] and port of discharge [Seattle]," and agreed to arrange for or procure "pre-carriage from place of receipt and on-carriage to place of delivery [New York]." (Aff. in Supp. of Pl.Motion, Exh. 1; Third Party Def. Supplemental Aff.).

The terms of the bill recite in pertinent part: "The containers, goods, or packages said to contain Goods as specified below in apparent good order and condition unless otherwise stated." *Id.* Noted in the column *NO. OF PKGS.* is the entry "1 container (384 cartons)." In the column marked DESCRIPTION OF PACKAGES AND GOODS is the entry "SHIPPER'S LOAD & COUNT," "SANKYO AUDIO PRODUCTS," "TOTAL: ONE (1) CONTAINER *ONLY.*" *Id.* No notations appear in the margin of the bill to qualify the number or condition of the goods received.

Defendants admit that only 271 cartons of the subject shipment were delivered to plaintiff in New York. (Def.Ans. to Pl.Interrog. ¶ 35). A security report prepared by employees of the third-party defendants, and submitted by defendants, reports that three men were observed dismounting from the flatbed car on which the container carrying the subject shipment rested. (Def. Reply Aff. in Opp., Exh. D). Inspection revealed that the original seal had been broken, but no seal was found on the car bed. Several cartons of the shipment were recovered near the container. The railroads' investigating officer estimated that the container was one-third empty, and that the container, judging from the amount of snow which had accumulated had been open for some time. *Id.*

These facts, not controverted by defendants, must be deemed admitted. S.D.N.Y. Local Rule 3(g). On March 8, 1978, defendants filed a written claim with third party defendant CONRAIL. (Third Pty.Def. Statement Pursuant R. 3(g) ¶ 11). On May 20, 1978, third-party defendant CONRAIL disallowed defendants' claim. *Id.* ¶ 12. The instant action was commenced by plaintiff on May 20, 1981 against defendants. Thereafter, on July 2, 1981, defendants filed a third-party complaint against third-party defendants. *Id.* ¶ 14.

## I. *Plaintiff's Motion for Summary Judgment Discussion*

The responsibility of the district court on a motion for summary judgment is to determine whether there exists any genuine issue of material fact to be tried. *American Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981); *Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir.1975). The court finds that plaintiff, having established a *prima facie* case as a matter of law, has carried its "preliminary burden" under Rule 56, Fed.R.Civ.P., of showing there is no genuine issue as to any material fact. *United States v. Pent-R-Books, Inc.,* 538 F.2d 519, 529 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

A shipper, in order to make a *prima facie* case, need only show receipt for carriage in good order and non-delivery. *M.W. Zack Metal Co. v. S.S. Birmingham City,* 311 F.2d 334, 337 (2d Cir.1962), *cert. denied,* 375 U.S. 816, 84 S.Ct. 50, 11 L.Ed.2d 51 (1963); *Lekas & Drivas, Inc. v. Goulandris,* 306 F.2d 426, 429 (2d Cir.1962); G. GILMORE & C. BLACK, THE LAW OF ADMIRALTY 183–85 (2d ed. 1975). The court finds that the bill of lading No. YKNY–005M, concededly issued by defendants for receipt of the goods, and defendants' admis-

sion of short delivery establish plaintiff's *prima facie* case against defendants.

A bill of lading is prima facie evidence of receipt by the carrier of the goods therein described. Carriage of Goods by Sea Act (COSGA), 46 U.S.C. § 1303(4). The bill of lading issued by defendants shows that plaintiff delivered 384 cartons to defendants for carriage to New York. The fact that the bill of lading states that the description is "SHIPPER'S LOAD & COUNT" does not relieve the carrier of liability for loss of the goods. *Spanish Am. Skin Co. v. The M.S. Ferngulf,* 143 F.Supp. 345, 349 (S.D.N.Y.1956), *aff'd,* 242 F.2d 551 (2d Cir.1957).

Defendants concede that the subject shipment was short delivered in New York. (Def.Ans. to Pl.Interr. ¶ 35.) [In view of this admission, the Receiving Report and the United States Customs Discrepancy Report submitted by plaintiff as probative evidence of the short delivery of 113 cartons by the defendants need not be discussed.]

Plaintiff has thus established a *prima facie* case. Defendants "may not [now] defeat the motion [for summary judgment] by relying on the contention of its pleadings. Rather [defendants] must produce 'significant probative evidence'" tending to support their position that an issue of material fact exists. *United States v. Pent-R-Books,* 538 F.2d at 529, (quoting *First National Bank v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

■ As a matter of law, a shipper does not bear the burden of explaining the loss of the cargo by the carrier. Once plaintiff establishes a *prima facie* case, the law casts upon the defendant "the burden of the loss which he cannot explain or, explaining, bring within the exceptional case in which he is relieved from liability." *Schnell v. The Vallescura,* 293 U.S. 296, 304, 55 S.Ct. 194, 196, 79 L.Ed. 373 (1934). The burden is such that defendant may bear "the responsibility for a loss which, in fact, may not be due to his fault, merely because the law, in pursuance of a wise policy casts on him the burden of showing facts relieving him from

liability." *Id.* at 307, 55 S.Ct. at 197. The burden, therefore, rests with defendants to affirmatively show by "significant probative evidence" that the immediate cause of the loss was an excepted cause, or that they exercised due diligence to prevent the loss. *M.W. Zack Metal Co.,* 311 F.2d at 337; *Lekas & Drivas, Inc.,* 306 F.2d at 431. *See* 46 U.S.C. §§ 190–95, 1304.

■ Defendants, in referring to the railroad security report, contend that "certain factual issues, if resolved, could provide defendants with a complete valid defense under 46 U.S.C. Section 1304(q) [1304(2)(q)] if it is shown that said burglary or theft was unforeseen and not caused by any negligence on the part of the defendants, and that this raises a question as to the defendants' liability to plaintiff in this action." (Def. Reply Aff. in Opp. ¶ 8).

Examining defendants' contention and the annexed security report in light of the inferences that can be drawn most favorably to defendants, the court finds that defendants have failed to raise a genuine issue of material fact. Even if the trier of fact could make the inference that the loss occurred while the goods were in the hands of third-party defendants, such a finding is not controlling as to plaintiff's right of recovery against defendants. An immaterial issue of fact does not preclude summary judgment. *Applegate v. Top Associates,* 425 F.2d 92, 97 (2d Cir.1970).

The obligations of defendants were governed not merely by COGSA, 46 U.S.C. §§ 1301–1315, but by the Harter Act as well, 46 U.S.C. §§ 190–95. COGSA covers the period "from the time when the goods are loaded to the time when they are discharged from the ship." 46 U.S.C. § 1301(e). The Harter Act is applicable to "the period between the discharge of cargo from the vessel and its proper delivery." *Caterpillar Overseas S.A. v. S.S. Expeditor,* 318 F.2d 720, 723 (2d Cir.1963), *cert. denied,* 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 272 (1963).

If COGSA, 46 U.S.C. § 1304(2)(q) applies, then defendants must produce significant

probative evidence that "[they] exercise[d] ... due diligence to prevent the harm." *M.W. Zack Metal Co.,* 311 F.2d at 337. The fact that the loss may have occurred while in the hands of the third-party defendants is immaterial to the question of whether defendants exercised due diligence to prevent the loss. Defendants have failed to produce any evidence showing that they exercised due diligence to prevent the loss. Only the production of such evidence would raise a genuine issue of material fact.

Defendants contend that "*if* it was shown that said ... theft was unforeseen and not caused by any negligence on the part of defendants," a valid defense could exist. Mere allegations or an offer to prove suspicions at trial are not sufficient to create disputed issues of material fact. Defendants "must support vague accusation and surmise with concrete particulars." *Applegate,* 425 F.2d at 96. A party opposing summary judgment cannot make secret of his evidence. *Donnelly v. Guion,* 467 F.2d 290 (2d Cir.1972).

If COGSA has no application here, but rather the Harter Act controls, then defendants must show substantial probative evidence that the loss was due to an excepted cause, or else "the absolute non-delegable duty to make safe delivery renders the carrier liable." *Isthmian Steamship Co. v. California Spray-Chemical Corp.,* 290 F.2d 486 (9th Cir.1961). Theft is not an excepted cause under the Harter Act.

A showing of genuine issue for trial "is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to judgment as a matter of law." *Bay City-Abrahams Bros. Inc. v. Estee Lauder, Inc.,* 375 F.Supp. 1206, 1208 n. 1 (S.D.N.Y.1974) (*quoting McGuire v. Columbia Broadcasting, Inc.,* 399 F.2d 902, 905 (9th Cir.1968).

Defendants have not asserted any facts, assuming they are true, which would entitle them to judgment as a matter of law. Defendants have thus failed to show any genuine issue of material fact. Plaintiff's motion, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment against defendants, is granted.

## II. Third Party Defendants' Motion For Summary Judgment

### Discussion

■ On June 7, 1982, the court, ruling from the bench, issued an order denying third-party defendants' motion for summary judgment against defendants with a memorandum opinion to follow. Since that time, the parties have appeared before the court to clarify certain facts. Upon careful consideration, the court vacates that part of the order entered on June 7, 1982 denying third-party defendants' motion for summary judgment, and for the reasons set forth below, grants third-party defendants' motion for summary judgment against defendants.

Third-party defendants move for summary judgment against defendants on the ground that defendants' suit for indemnity against third-party defendants is untimely. Third-party defendants argue that the intermodal bill of lading under which the subject shipment moved incorporated the terms of the third-party defendants' Uniform Straight Bill of Lading. Section 2(b) of the Uniform Straight Bill of Lading provides that as a condition precedent to third-party defendants' liability, suit must be brought within two years and one day from the day written notice is given disallowing defendants' claim.

Defendants do not dispute that they failed to file suit within two years and one day from the disallowance of their claim. Nor do defendants dispute the terms of the intermodal bill of lading. Defendants urge, rather, that since the third-party complaint speaks of indemnity, the contractual limitation does not begin to run until defendants are required to make payment to plaintiff for the damages alleged.

The court finds that third-party defendants' Uniform Straight Bill of Lading was incorporated by the intermodal bill of lading issued by defendants, and that defend-

ants' failure to comply with the time limitations of section 2(b) of the Uniform Straight Bill of Lading renders defendants' suit against third-party defendants untimely.

In the instant case, the intermodal bill of lading issued by defendants expressly incorporated third-party defendants' Uniform Straight Bill of Lading. Defendants' intermodal bill of lading provides in part:

24. * * *

The goods carried hereunder are subject to all the terms and provisions of the tariff or tariffs on file with the Federal Maritime Commission [and] Interstate Commerce Commission . . . and the terms of said tariff or tariffs are hereby incorporated herein as part of the terms and conditions of this Bill of Lading.

Section 25 of the intermodal bill of lading, in delineating third-party defendants' rights, further provides:

At all times when the goods are in the custody of the Railroad it shall be entitled to all the rights, privileges, liens, limitations of and exonerations from liability, optional or discretionary rights, or rights of indemnity . . . to the full extent permitted to rail carriers under the rules and regulations of the Interstate Commerce Commission . . . nothing contained in this Bill of Lading shall be deemed to be a surrender by any Railroad of any of its rights . . . or any increase of any of its limitations of and exonerations from liability under said rules, regulations and laws or permitted by the Interstate Commerce Commission.[1]

Section 26b provides that liability for any loss shall be governed "[d]uring rail transportation within the United States, as permitted by the Interstate Commerce Commission and according to the joint tariffs on file with the Federal Maritime Commission and the Interstate Commerce Commission."

Third-party defendants' bill of lading is the I.C.C. Uniform Straight Bill of Lading in effect at the time of the transaction and set forth in Eastbound Intermodal Tariff No. 1, I.C.C. No. 1, F.M.C. No. 4, Rule No. 38. The terms of the Uniform Straight Bill of Lading are approved and authorized by the Interstate Commerce Commission, 14 I.C.C. 346, 52 I.C.C. 671, 64 I.C.C. 357. Section 2(b) of third-party defendants' Uniform Straight Bill of Lading provides:

As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury, or delay occurred, within nine months after delivery of the property . . . and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim. . . . Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

The two year and one day suit limitation contained in third party defendants' Uniform Straight Bill of Lading was incorporated into the intermodal bill of lading issued by defendants. Thus, defendants are subject to that limitation. Defendants' failure to bring suit within two years and one day from the disallowance of their claim bars defendants' recovery against third-party defendants. This limitation is expressly authorized by Congress in § 20 of the Interstate Commerce Act, 49 U.S.C. § 20(11),[2] and is therefore not unreasonable. Contractual limitations contained in the bill of lading may not be avoided by designating

---

1. Section 1 of the intermodal bill of lading defines "permitted by the Interstate Commerce Commission" to mean "as provided by the terms and conditions of the Uniform Domestic Straight Bill of Lading or other form of Uniform Bill of Lading adopted by the Carriers . . . as prescribed or permitted by the Interstate Commerce Commission, even though such Bill

of Lading was not, and was not intended to be, issued covering the goods."

2. The Carmack Amendment, 49 U.S.C. § 20(11) (1976), was revised without substantial change and reenacted as 49 U.S.C. § 11707 (Supp. 1979).

the form of the action as one other than for breach of the contract of carriage. *Georgia, Fla. & Ala. Ry. v. Blish Milling Co.,* 241 U.S. 190, 197, 36 S.Ct. 541, 544, 60 L.Ed. 948 (1916).

In reaching its conclusion, the court finds the reasoning of four prior district court cases persuasive. Three of those decisions, *United States Steel Int'l, Inc. v. S.S. Lash Italia,* 439 F.Supp. 365 (S.D.N.Y.1977); *Yeromex v. S.S. Tendo,* No. 75 Civ. 376 (S.D.N.Y.); *Brumley-Donaldson Co. v. Shipping Corp. of India,* No. 7020–72H (S.D.Ala.) [3] involve third-party actions by a steamship company against a railroad. In each case, the court held that the ocean carrier's claim was barred by the ocean carrier's failure to comply with the time limitations contained in section 2(b) of the inland rail carrier's Uniform Straight Bill of Lading.[4] The fact that each such claim was an indemnity claim did not relieve the claimant from the responsibility of complying with section 2(b).

The court is aware of the case of *Grant Geophysical Corp. v. M.V. Mediterranea,* 1981 A.M.C. 850 (S.D.Tex.1981), which reaches the opposite result on facts similar to the cases cited and the case at bar. The court, however, is unpersuaded by the reasoning employed in that case. In *Grant,* the district court held that the ocean carrier's third-party action against the railroad was not barred even though the ocean carrier had failed to comply with the time limitations contained in the railroad's uniform bill of lading. The district court reasoned that the railroad was not an initial carrier and therefore the time limitations authorized by the Carmack Amendment did not directly apply. *Id.* at 851–52. It distinguished *United States Steel* and *Yeromex* by the fact that, in both cases, the rail carrier was the initial carrier, *Id.*

The court fails to perceive the significance of this distinction where the issue is whether the failure to comply with the time limitations of the rail carrier's Uniform Straight Bill of Lading bars a third-party action against the rail carrier. It is significant that the *Grant* decision was not followed in the district in which it was decided. In *American Chicle Div. Warner Lambert Co. v. M.V. Mayaguez,* 540 F.Supp. 166 (S.D.Tex.1981), the cargo owner brought suit against both the ocean carrier, the initial carrier, and the inland rail carrier for breach of the intermodal bill of lading issued by the ocean carrier. The district court held that where the time limitations contained in section 2(b) of the railroad's Uniform Bill of Lading were incorporated by the ocean carrier's intermodal bill of lading, the cargo owner's failure to comply with section 2(b) barred the cargo owner's suit against the railroad. *American Chicle* distinguished *Grant* by noting that the *Grant* court apparently thought that the ocean carrier's intermodal Bill of Lading did not incorporate the railroad's Uniform Bill of Lading. In the case at bar, the intermodal bill of lading under which the subject shipment moved expressly incorporated third-party defendants' Uniform Straight Bill of Lading.

Defendants rely on *Prudential Lines v. General Tire Int'l Co.,* 440 F.Supp. 556 (S.D.N.Y.1977), and *Francosteel Corp. v. S.S. Tien Cheung,* 375 F.Supp. 794 (S.D.N.Y. 1973). These cases, however, do not involve a rail carrier and the possible incorporation of the railroad's Uniform Straight Bill of Lading, and are, therefore, inapposite to the instant discussion.

For these reasons, the court finds that there is no issue of material fact and that third-party defendants are entitled to summary judgment as a matter of law. Accordingly, third-party defendants' motion for summary judgment against defendants is granted, as the action is brought after the running of the contractual time limitations.

Dated: New York, New York.

---

3. Both *Yeromex* and *Brumley-Donaldson* are reported in part in a footnote in *United States Steel,* 439 F.Supp. at 367 n. 1.

4. The time limitation dealt with in those cases concerned the nine month requirement. 439. F.Supp. at 367 & n. 1.