**SOMERSET MARINE, INC. a/s/o Central National Gottesman, Inc., Plaintiff,**

v.

**M/V "AMER SHANTI," M/V "Silver Star," their engines, tackle, boilers, etc., Massan Shipping Industries, Inc., and Trevose Shipping Co., Ltd., Defendants.**

No. 93 Civ. 5905 (HB).

United States District Court, S.D. New York.

July 18, 1995.

Richard F. Salz, Barra & Salz, New York City, for plaintiff.

Robert E. Anderson, Allendale, NJ, for defendants.

### MEMORANDUM AND ORDER

BAER,[1] District Judge.

Plaintiff Somerset Marine, Inc. ("Somerset") brings this admiralty suit against Massan Shipping Industries, Inc. ("Massan") and its vessels, MV AMER SHANTI and MV SILVER STAR for damages to kraft linerboard rolls allegedly caused by the defendants during transport of same. After a bench trial held on April 21 and 24, 1995, and consideration of the witnesses' testimony, depositions, and exhibits, I find that Somerset has established a *prima facie* case while defendants subsequently failed to show facts relieving it from liability.

### I. FACTS

Somerset, a New York corporation, is a marine insurance company. Massan is a foreign corporation engaged in the business of chartering ocean vessels.

Massan chartered and operated the M/V AMER SHANTI and M/V SILVER STAR in August and September 1992, for the purpose of carrying two lots of kraft linerboard that Gaylord Central National, Inc., ("Gaylord"), the shipper, sold to Iberoamericana del Embalaje S.A. ("IDESA"). The first sale was on August 23, 1992 for 856 rolls at $472,707.20 to be carried on the MV AMER SHANTI. The second sale was on September 23, 1992 for 220 rolls at $134,477.60 to be carried on the MV SILVER STAR.

Somerset acted as insurer of the rolls. IDESA filed claims with Somerset for crushed core damage to 32 rolls[2] from the AMER SHANTI shipment and 4 rolls from the SILVER STAR shipment. Somerset paid IDESA $18,835.43 for the AMER SHANTI claim and $2,524.98 for the SILVER STAR claim. Somerset, as the subrogee, now sues Massan to recover the $21,360.41. Somerset alleges that Massan bears the responsibility for the crushed cores, not their insured.

For each shipment, Massan's agent signed "clean" bills of lading, acknowledging receipt of the rolls and cores in apparent good order and condition. Neither the Mate's Receipts nor A.S.D. Service Orders noted any crushed cores.

Following discharge, the rolls were either placed in the port warehouse or stored on the dock. For the AMER SHANTI shipment, half of the cargo was picked up by the consignee's trucker on the date of discharge,

---

1. Megan Ouchterloney, a second-year law student at Fordham University School of Law, assisted in the research and preparation of this Memorandum.

2. A roll with a crushed core cannot be used in the manufacturing process because it cannot be placed in a roll chuck or axle. Based on the evidence, the cores become crushed when the rolls are dropped.

while the balance remained in Massan's custody on the pier or in the port warehouse until it was delivered a week later. For the SILVER STAR shipment, all of the cargo was stored on the pier for one day before being delivered to the consignee.

The Delivery Notices for each shipment from the charterer, Massan's agent, to the consignee contain damage exceptions that the consignee noted at delivery. In both instances, the consignee had a surveyor assess the extent of damage to the rolls within three days of final delivery, and supplied Massan with the surveyor's report within a week.

## II. DISCUSSION

The Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333. The rights and obligations of the parties are governed by the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1300 *et seq.* The parties agreed that COGSA controls throughout the entire time that the goods were in Massan's custody.

■ Under COGSA, the plaintiff first must establish a *prima facie* case of carrier liability. *M. Golodetz Export Corp. v. S/S Lake Anja,* 751 F.2d 1103, 1109 (2d Cir.), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2361, 86 L.Ed.2d 261 (1985). The burden then shifts to the defendant who must show by a preponderance of the evidence facts that relieve it from liability. *Id.* at 1111 (noting the same standard in COGSA and *The Vallescura,* 293 U.S. 296, 307, 55 S.Ct. 194, 197, 79 L.Ed. 373 (1934)).

### A. Somerset's Prima Facie Case

■ Under COGSA, evidence of receipt by the carrier of the goods in good condition and delivery in damaged condition establishes a *prima facie* case of carrier liability. *Demsey & Assocs. v. S.S. Sea Star,* 461 F.2d 1009, 1014 (2d Cir.1972). A clean bill of lading is *prima facie* evidence of the carrier's receipt of the goods in good condition. *Id.* However, the bill of lading only reflects the external condition of the goods. *S.M. Sartori v. S.S.*

*Kastav,* 412 F.Supp. 1181, 1183 (S.D.N.Y. 1976). In *American Tara Corp. v. Atlantic Gulf Serv.,* 459 F.Supp. 335, 336 (S.D.N.Y. 1978) (citation omitted), the court noted that "there may be a need for some evidence beyond the bill of lading, such as testimony regarding the nature of the goods and the type of damage suffered."

■ Somerset has established a *prima facie* case. Although the core damage may not have been readily apparent in Massan's warehouse before loading, Massan's captain undoubtedly would have noted such damage on the bill of lading during loading. Additionally, the consignee reported damage when it picked up the rolls. A surveyor inspected the damaged rolls within three days of the consignee's receipt and noted the core damage. Somerset has thereby sustained its burden to show that the rolls were loaded in good condition and delivered damaged.

### B. Massan's Burden

Once the plaintiff has established a *prima facie* case, the burden "rests with defendants to affirmatively show by 'significant probative evidence' that the immediate cause of the loss was an excepted cause, or that they exercised due diligence to prevent the loss." *Sankyo Seiki, Inc. v. S.S. Korean Leader,* 556 F.Supp. 337, 340 (S.D.N.Y.1982) (citations omitted), *aff'd,* 723 F.2d 895 (2d Cir. 1983).

■ Massan has not satisfied its burden. It failed to give instructions to the stevedores at Las Palmas regarding how to store the rolls either in the port warehouse or on the pier. It did not offer evidence to eliminate the theory that the rolls were dropped when unloaded by Massan, or were stored poorly on the pier or in the port warehouse.[3] Massan's argument that it did not receive notice must fail because the Delivery Report noted damage exceptions, and the subsequent survey, within a week of delivery, explained the core damage.

3. Massan offered photographs of storage and loading prior to shipment of paper rolls. However, it is impossible to identify the ship and shipment being loaded.

## C. Damages

 In cargo cases, damages are calculated as the difference between the fair market value of the goods at their destination in the condition in which they should have arrived and the fair market value in the condition in which they actually did arrive. *Kanematsu–Gosho Ltd. v. M/T Messiniaki Aigli*, 814 F.2d 115, 118 (2d Cir.1987). Somerset paid $21,360.41 and is entitled to judgment against defendant for this amount, plus interest from October 19, 1992 and the costs of this action.

## III. CONCLUSION

For the foregoing reasons, Somerset is entitled to judgment for the damage to the kraft linerboard rolls.

SO ORDERED.

